**William S. GILES, II, Plaintiff,**

**v.**

**HOWARD UNIVERSITY et al., Defendants.**

**Civ. A. No. 76–1578.**

United States District Court, District of Columbia, Civil Division.

March 17, 1977.

Kenneth M. Trombly, Washington, D. C., for plaintiff.

Dorsey Edward Lane, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This is an action alleging denial of fifth amendment procedural due process rights and a common law claim for a breach of contract or tort. The matter now before the Court is the defendants' motion for summary judgment.

The undisputed facts are as follows:

During the 1973–1974 and 1974–1975 academic years, the Howard University College of Medicine had in effect a "Student Promotions Policy" which provided, *inter alia*:

II. No student having a failure or incomplete grade in any freshman . . course will be promoted to the next class.

III. A student who fails in an anatomy, biochemistry, microbiology, pharmacology and/or physiology course will be given a passing grade if he obtains a standard score of 380 or more in that subject in a "special" National Board Examination or regular National Board Examination.

IV. A student who has failing grades in one or two courses which terminate at the end of the first semester will be given an opportunity to participate fully in second semester work and to attend the Directed Study Program. Such student, however, should understand the implications of failing any additional course

. . . .

. . . . .

VIII. If the student fails to remove the one deficiency or two deficiencies at the end of the Directed Study Program he will be dropped from the College of Medicine or may be allowed to repeat the year (as determined by the Promotions Committee). . . .

If allowed to repeat the year, the Promotions Committee may also require such student to audit any course, including a course already passed to enable him to maintain his fund of basic science knowledge.[1]

Plaintiff enrolled in the Howard University College of Medicine in August 1973. He passed all his first semester classes except biochemistry, which he failed. The College permitted him to participate fully in the second semester program, however, provided he agreed to retake biochemistry in the Directed Study Program during the summer of 1974. He passed all his second semester courses but failed biochemistry in the Directed Study Program during the summer. Plaintiff then received a letter from the Dean of the Medical College, Marion Mann, M.D., informing him that he would be allowed to continue as a medical student if he repeated biochemistry and retook and obtained satisfactory grades in the other courses in his curriculum that he had already passed. Dean Mann's letter also stated:

Section IV of the Student Promotions Policy is applicable only to students who begin the academic year in good academic standing. The Committee hereby informs you that you are not in good academic standing but are on probation; and that if you fail *any* course during the first semester, you will be dropped from the College of Medicine.

Plaintiff repeated the courses and passed biochemistry, but failed anatomy. On March 7, 1975, he was dropped from the College of Medicine. He thereupon requested readmission. By letter of July 7, 1975, Dean Mann informed the plaintiff that his request for readmission had been considered and that the committee considering the request would be reconvened if the plaintiff passed special National Board Examinations in anatomy, biochemistry, microbiology, and physiology. The plaintiff took these examinations and failed all four. No further action was taken on his request for readmission.

### A. *The Procedural Due Process Claim.*

Only Federal Government action is subject to the constitutional restraints of fifth-amendment procedural due process. *See Public Utils. Comm'n v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952). In this Circuit, many courts have held that Howard University is not sufficiently involved with the Federal Government to make its actions equivalent to Federal Government actions and thus subject to the restraints of the fifth amendment. *E. g., Williams v. Howard Univ.,* 174 U.S.App. D.C. 85, 528 F.2d 658, 660, *cert. denied,* 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 123 (1976); *Greene v. Howard Univ.,* 271 F.Supp. 609, 612–13 (D.D.C.1967), *rev'd on other grounds,* 134 U.S.App.D.C. 81, 412

---

1. The numbering of the sections in the 1973–1974 and the 1974–1975 policies is different, but the language of the quoted paragraphs is the same. We follow the numbering used in 1973–1974.

F.2d 1128 (1969). Absent a showing to distinguish this case, the Court considers itself bound to follow the rule of those decisions.

In the Memorandum supporting his application for a temporary restraining order, the plaintiff tried to distinguish his case by arguing that previous decisions had not considered a federal statute that authorizes the Secretary of Health, Education, and Welfare to "control and supervise" the expenditure of direct federal appropriations to Howard University, 20 U.S.C. § 122, and by stating that his participation in the Public Health and National Health Service Corps Scholarship Training Program made his case different from others. He has not reiterated these arguments in his written opposition to the defendants' motion for summary judgment, which raises the fifth amendment issue. The Court cannot be sure whether the plaintiff has abandoned these positions.

Even if the existence of 20 U.S.C. § 122 was not called to the attention of the courts that have previously ruled on the question of Howard University's amenability to the fifth amendment and if the plaintiffs in previous cases have not been recipients of public health scholarships, the Court does not believe these factors sufficiently distinguish this case to except it from the rule of previous decisions. Plaintiff has not shown that the Federal Government exercises sufficient control over the actions of Howard, as required under *Williams v. Howard Univ.,* 174 U.S.App.D.C. 85, 528 F.2d 658, 660, *cert. denied,* 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 123 (1976). Defendants' motion for summary judgment as to the due process claim will therefore be granted.

B. *The Common Law Claim.*

The plaintiff has also alleged a common law claim within the Court's diversity jurisdiction. The defendants have not challenged our jurisdiction on the basis of diversity. Being satisfied that the complaint states a cause of action cognizable under our diversity jurisdiction at least with respect to the University and that the claim as to the other defendants is likely cognizable under our pendent jurisdiction, the Court has considered the defendants' motion for summary judgment on the common law claim.

■ In order to state an actionable claim in these circumstances, the plaintiff must adduce evidence of a violated contractual right or improper motivation or irrational action on the part of Howard University. *Williams v. Howard Univ.,* 174 U.S.App. D.C. 85, 528 F.2d 658, 660–61, *cert. denied,* 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 123 (1976).

With respect to his breach of contract claim, the plaintiff alleges that the Medical College's "Student Promotions Policy" constitutes a contract between him and the University which the University breached. Specifically, he alleges that the University breached the contract by imposing conditions upon him that were not provided for in the Student Promotions Policy after he had twice failed biochemistry. The promotions policy makes it clear that the University had the option of dismissing the plaintiff at this juncture. It is also clear that the University could have required the plaintiff to repeat his first year and to audit any course. The policy is silent as to what other options the University may have had.

■ Assuming the Student Promotions Policy constituted a contract between plaintiff and the University, the task before the Court is to interpret the contract to determine the intent of the parties. Contract interpretation is a function of the court where, as here, no extrinsic evidence is necessary to determine an agreement's meaning and/or the meaning is so clear that reasonable men could reach only one conclusion. J. Calamari & J. Perillo, Contracts § 49 (1970). Since it is apparent that this is not an integrated agreement, the standard is that of reasonable expectation—what meaning the party making the manifestation, the University, should reasonably expect the other party to give it. *Id.* § 47, at 90.

Under the contract, the University reserved to itself the right to dismiss a student who failed a class and did not succeed in removing the deficiency through the Directed Study Program. It seems apparent, therefore, that it also reserved the right to require such a student to comply with any reasonable condition to retain his student status. Plaintiff would have us apply the canon "expressio unius est exclusio alterius" to the agreement and hold that by stating it could require a retained student to audit any course, the University thereby relinquished its right to impose any other condition upon continued enrollment. This result is patently unreasonable. It would tie the hands of University officials trying to assist marginal students and maintain academic standards.

After reading the Student Promotions Policy, the reasonable expectation of any student is that if he fails a course and does not make up the deficiency in the Directed Study Program, he can be dismissed or can be retained upon compliance with any reasonable condition. This is the interpretation the Court gives the Student Promotions Policy. It does not render meaningless the "audit any course" language. That language applies to both freshman and sophomore students. When read in light of the Court's interpretation, it means that when allowed to repeat a year a sophomore may be required to audit freshman classes or a freshman may be required to audit other classes.

Under this interpretation, the plaintiff has failed to adduce any evidence of a violated contract right. He has also failed to present any facts to show improper motivation or irrational action on the part of the University or any of its officials. On the contrary, all the evidence indicates the University went out of its way to help the

2. This case is unlike *Levine v. George Wash. Univ. School of Medicine & Health Sciences,* Civil No. 8230–76 (D.C.Super.Ct. Sept. 7, 1976), where the defendant University entered into a contractual arrangement upon which the student reasonably relied and then provided its own subjective interpretation of the agreement, without notice, to the student's detriment.

plaintiff remain in medical school without compromising its academic standards.[2] It gave him at least three "second chances." Under these circumstances, the facts necessary to sustain an actionable claim have not been shown. *Williams v. Howard Univ.,* 174 U.S.App.D.C. 85, 528 F.2d 658, *cert. denied,* 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 123 (1976). The defendants' motion for summary judgment on the common law claim will therefore be granted.

An Order consistent with this Memorandum Opinion has been entered today.

Here, the University apprised the plaintiff of its interpretation of the promotions policy and advised him of the specific conditions for his retention. Even when the plaintiff failed to satisfy those conditions, the University indicated it might be willing to give him another chance.