Sheila M. LYONS, Plaintiff, Appellee,

v.

SALVE REGINA COLLEGE and Sheila M. Megley, Ph.d., Individually and in her capacity as Dean of Students at Salve Regina College, Defendants, Appellants.

No. 77–1083.

United States Court of Appeals, First Circuit.

Argued June 6, 1977.

Decided Nov. 25, 1977.

Peter J. McGinn, Providence, R. I., with whom Normand G. Benoit and Tillinghast, Collins & Graham, Providence, R. I., were on brief, for defendants, appellants.

Walter R. Stone, with whom Stone & Clifton and Joanne E. Mattiace, Providence, R. I., were on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and CAFFREY,* District Judge.

CAFFREY, District Judge.

This is an appeal from a final Order of the District Court which required defendant-appellants to reinstate plaintiff-appellee Sheila Lyons as a student in Salve Regina College for the purpose of obtaining a nursing degree.

Plaintiff filed an action in the District Court alleging a cause of action under 42 U.S.C. § 1983 (1970) in September of 1976. The complaint was amended to invoke the diversity jurisdiction of the District Court for an action in the nature of breach of contract. It is undisputed that plaintiff, while a student at the College, received a grade of "F" in a course captioned "Nursing 402A." Because of this grade, under the rules of the College, she could no longer continue her studies towards a degree in nursing, and, in fact, she graduated from the College with a degree in the field of psychology. The relief sought by plaintiff on the basis of the amended complaint was an order requiring the College to change her grade in Nursing 402A from an "F" to an "Incomplete," reinstatement for the purpose of completing the courses required for a nursing degree, and money damages.

Briefly stated, plaintiff's contract theory was that the College Manual and Academic Information booklet constituted a contract between plaintiff and the College, and that the booklet contained provisions for the selection of a Grade Appeals Committee (Committee), for the hearing of a student's appeal concerning a disputed grade by the Committee, and for the recommendation of a course of action to the Dean of the College by the Committee. The ruling below was that the recommendation of the Committee was binding upon the Dean and that the Dean's failure to follow the recommendation, as found by the District Court, constituted an actionable breach of contract by the College.

The text of the pertinent parts of the College's Academic Information and Registration Materials for 1975 and 1976 is set out in the opinion of the District Court in *Lyons v. Salve Regina College*, 422 F.Supp. 1354, 1358 (D.R.I.1976), and need not be fully repeated here. The critical portion of that document appears under the heading "Grade Appeal Process" and provides, "After both cases [the student's and the teacher's] are presented to the three-member grade appeals committee, the recommendation of the committee is made to the Dean of Students/Associate Dean of the College."

After the hearing, the three faculty members who constituted the Grade Appeals Committee could not agree on a unanimous recommendation to Dean Megley. On the contrary, they recommended as follows:

Member Foglia: "The 'F' grade should not be altered. The student should apply to the nursing department for reinstatement to the program."

Member Trimbach: "It is my recommendation that Sheila Lyons be awarded the grade of Incomplete in Nursing 402A, until the work missed early in the Fall of 1975 is completed. The specific terms of this arrangement should be agreed upon by both parties."

Member Carlin: "It is recommended therefore that Sheila Lyons be granted an 'Incomplete' for the course in question

* Of the District of Massachusetts, sitting by designation.

and that she be allowed to make up the clinical classes and seminars that she missed."

Dean Megley determined herself not bound by these diverse recommendations and, in effect, overruled the two-to-one majority which favored the entry of the grade of "Incomplete" in lieu of the "F" awarded by the instructor, Ms. Hull. The crucial question before us is whether the District Court erred in construing the words "recommendation of the committee . . . to the Dean" as binding upon the Dean. There is nothing in either the College Manual or the College Academic Information and Registration Materials which in any way refers to the meaning of the word "recommendation" in the quoted language, nor is there any provision which indicates directly or indirectly whether the Dean is bound by or free to disregard or alter the "recommendation" of the Committee.

Because the District Court entertained this case on the basis of its diversity jurisdiction, it was required under familiar principles to apply the substantive law of Rhode Island. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Our research has found no case in the area of either contract law or educational law in which the Supreme Court of Rhode Island has enunciated the principles of law to be applied by a trial court in resolving a dispute arising out of the relationship between a private academic institution and its students. Because of the non-availability of guidance from the Rhode Island Supreme Court, the District Court undertook to resolve the controversy between the parties, as to the nature and extent of a student's rights under the academic administrative appellate procedure available at this particular institution, on the basis of traditional principles of contract law. The Court proceeded on the assumption that the College Manual and the College Academic Information and Registration Materials set out the terms of an ordinary commercial contract between Salve Regina College and

the members of its student body including plaintiff. We are of the opinion that the approach which the Rhode Island Supreme Court would adopt, in construing the language of a claimed contract between a student and her college or university, is that prescribed in the opinion of the Court of Appeals for the Tenth Circuit in *Slaughter v. Brigham Young University*, 514 F.2d 622 (10th Cir. 1975). There the Court ruled:

> The trial court's rigid application of commercial contract doctrine advanced by plaintiff was in error . .. ..
>
> It is apparent that *some* elements of the law of contracts are used and should be used in the analysis of the relationship between plaintiff and the university to provide some framework into which to put the problem . . .. This does not mean that "contract law" must be rigidly applied in all its aspects, nor is it so applied even when the contract analogy is extensively adopted. . . . The student-university relationship is unique, and it should not be and can not be stuffed into one doctrinal category. . .

*Id.* at 626.

While arguably the language should be construed against the College as the author thereof, nevertheless we believe it should be kept in mind, as was pointed out by the District Court for the District of Columbia in *Giles v. Howard University*, 428 F.Supp. 603, 605 (D.D.C.1977), that: "Contract interpretation is a function of the court where, as here, no extrinsic evidence is necessary to determine an agreement's meaning . . .. Since it is apparent that this is not an integrated agreement, the standard is that of reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the other party to give it. . . ."

There is nothing in the instant record to indicate that a student at Salve Regina College had any rational basis for

believing that the word "recommendation" meant anything other than its normal, everyday meaning. It is not a word of art, nor has it acquired any secondary meaning in academic circles which can be discerned from the instant record.[1] Nothing in the student manual suggests that a recommendation by the Committee could reasonably be thought to be anything more than an expression of the Committee's opinion as to the preferred course of conduct to be followed by the Dean in resolving the issue between the teacher and the student. Nothing in this document affords any basis for a reasonable expectation that it was mandatory upon the Dean to follow the Committee's views. Consequently, we rule that it was error for the District Court, in effect, to convert a recommendation of the Committee into a mandatory order from the Committee to the Dean.

In view of the above ruling, only brief mention will be made of two other points raised by appellant, namely, lack of diversity of citizenship and lack of an amount in controversy in excess of $10,000. Suffice it to say that, while the evidence was both sharply conflicting and rather slim on both of these points, the findings of fact by the District Court cannot be said to be plainly wrong on this record and will, therefore, not be disturbed by this Court.

*Reversed.*

---

1. Even if the word "recommendation" had acquired a localized, albeit unusual, secondary meaning in the academic community at Salve Regina College, the record is barren of any evidence suggesting, much less proving, that plaintiff relied on such a meaning to her detriment in determining her course of action.