**Leevonn CLOUD, Plaintiff, Appellant,**

v.

**TRUSTEES OF BOSTON UNIVERSITY, et al., Defendants, Appellees.**

**No. 83–1182.**

United States Court of Appeals, First Circuit.

Argued Sept. 12, 1983.

Decided Nov. 4, 1983.

Robert Pressman, Cambridge, Mass., with whom Gail Strassfeld, Brookline, Mass., was on brief, for plaintiff, appellant.

John H. Henn, Boston, Mass., with whom Thomas P. Billings, Foley, Hoag & Eliot and Bancroft Littlefield, Jr., Boston, Mass., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, COWEN *, and SKELTON *, Senior Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Leevonn Cloud appeals from the district court's granting of summary judgment on behalf of appellees, Trustees of Boston University.

## I.

Cloud, a third-year law student at Boston University, was charged with four separate incidents of serious misconduct for peeping under the skirts of women students in the university library. Cloud allegedly engaged in the conduct while crawling on all fours under tables where the women were seated. The university conducted a disciplinary hearing pursuant to the Provisional Student Code (PSC), a copy of which was sent to

* Of the Federal Circuit, sitting by designation.

Cloud along with a statement of charges. The PSC provides that various sanctions, including expulsion, may be imposed on a student found guilty of serious misconduct. The PSC affords students the following procedural rights:

1) notice in writing of the alleged violation of the code and of the time and place of a hearing;

2) a hearing before a three-member Judicial Committee selected from one or more of the faculty, student body and administration;

3) a university-appointed prosecutor;

4) a university-appointed Hearing Examiner who is a licensed attorney.

Further, the PSC provides certain "protections of due process" including:

1) the right to be represented at the hearing by legal counsel;

2) the right to have the case decided by an impartial judicial body;

3) the right to confront and cross examine any witness;

4) the right to call witnesses and introduce evidence.

Finally, the governing procedures at the hearing are established by the PSC:

1) conformity to technical rules of procedure is not required, rather the Hearing Examiner may make procedural rulings to expedite the hearing and insure "due process of law";

2) the hearing is generally closed to the public;

3) the technical rules of evidence do not govern the hearing, but the Hearing Examiner has discretion to make protective rulings to exclude unreliable or prejudicial evidence;

4) the Judicial Committee is the sole arbiter of weight of the evidence, demeanor and credibility of the witness, guilt or innocence of the student and the appropriateness of any sanctions imposed.

The university appointed Leslie Srager, General Counsel of Boston University, as Hearing Examiner, and Bancroft Littlefield as prosecutor. The hearing lasted 20 hours,

with Cloud, who had counsel, testifying on his own behalf and presenting nine witnesses. The university presented six witnesses, one of whom was permitted to testify outside of Cloud's field of vision because of her professed fear of appellant. The university also introduced the transcript of Cloud's 1970 rape conviction in a Maryland court. The Judicial Committee found Cloud guilty of all four charges and imposed the sanction of expulsion. Cloud's appeal to the President of Boston University was unsuccessful.

Cloud subsequently brought a diversity action in the district court seeking damages and reinstatement, in which he alleged violation of his contract rights due to the improper conduct of the hearing. He also alleged violation of his privacy rights under Mass.Gen.Laws ch. 214, § 1B. The district court granted Boston University's motion for summary judgment, and Cloud now appeals.

## II.

■ We first consider Cloud's attack on the fairness of his disciplinary hearing. Since his claim is based on his contract with the university, Massachusetts law governs this issue. We have, however, found little Massachusetts caselaw describing the principles to be applied in ascertaining the terms of the contract established between a university and its students. Thus we apply the standard of *Giles v. Howard University,* 428 F.Supp. 603, 605 (D.D.C.1977), which we adopted in *Lyons v. Salve Regina College,* 565 F.2d 200, 202 (1st Cir.1977) (applying Rhode Island law), *cert. denied,* 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978); namely, the standard of "reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." *See also Slaughter v. Brigham Young University,* 514 F.2d 622 (10th Cir.), *cert. denied,* 423 U.S. 898, 96 S.Ct. 202, 46 L.Ed.2d 131 (1975).

■ Cloud argues that his hearing should have been governed by the Law School Disciplinary Rules (LSDR), rather than the PSC, since Cloud was a member of the law school community.[1] We disagree. The alleged misconduct took place in the general library of the university, not at the law school. The complaining students were not law students. The LSDR Art. I–1 provides,

Students are subject both to the rules of Boston University and to the rules and regulations of the School of Law, as published from time to time, relating to student conduct and discipline.

Cloud contends that the PSC was not properly "published" as required by the above language. However, the university printed copies of the PSC and kept them on file in the Office of Student Life for distribution to interested students. Interpreting the language "published from time to time" in light of the reasonable expectation of a student, the university's action was adequate. We do not think the phrase required distribution of the PSC to every student as Cloud suggests. We reject Cloud's challenge to the application of the PSC and hold that it was within the reasonable expectation of any student reading the above quoted passage from the LSDR.

■ Cloud also attacks the fairness of the hearing as conducted under the PSC. The Massachusetts Supreme Judicial Court has recently spoken on the issue of fair procedure in college expulsions. The court held that "[i]f school officials act in good faith and on reasonable grounds ... their decision to suspend or expel a student will not be subject to successful challenge in the courts." *Coveney v. President & Trustees of Holy Cross College,* 388 Mass. 16, 19, 445 N.E.2d 136, 139 (1983). This deferential standard of review applies when, as in *Coveney,* there is no contractual right to a hearing. Where, as here, the university specifically provides for a disciplinary hearing before expulsion, we review the procedures followed to ensure that they fall

---

1. Cloud views the provisions of the LSDR as more favorable than the PSC and seeks a hear-

ing in compliance with the LSDR.

within the range of reasonable expectations of one reading the relevant rules. *Lyons,* 565 F.2d at 202. We also examine the hearing to ensure that it was conducted with basic fairness.[2]

■ Although the PSC specifically states that hearings are not controlled by technical rules of either evidence or procedure, Cloud seeks to invoke such rules arguing that the Hearing Examiner selectively utilized them in resolving procedural questions during the hearing. This is a spurious argument. The Hearing Examiner referred, for comparison, to certain court-established evidentiary and procedural rules in making his own decisions. Similarly, we may refer to such rules in measuring the adequacy and fairness of the hearing. To argue that there can be no reference to technical rules developed by courts over time to ensure fairness without triggering full application of those rules is patently incorrect. Reference to rules of this nature was, if anything, beneficial to Cloud; their use should not be discouraged by making them a straitjacket for the university.

■ Although we do not find any of the challenged conduct violative of Cloud's "contract" right as construed under the *Lyons* standard, we consider the objections seriatim. In reviewing the granting of a motion for summary judgment, the facts must, of course, be viewed in the light most favorable to the party opposing the motion. *See, e.g., Santoni v. Federal Deposit Insurance Corp.,* 677 F.2d 174 (1st Cir.1982).

■ Cloud objects to the introduction of the transcript from his prior rape trial as unduly inflammatory. Portions of the transcript were admitted by the Hearing Examiner, under a limiting instruction, for use by the Judicial Committee in deciding on sanctions and in judging the credibility of witnesses, two functions specifically allocated to the Judicial Committee by the PSC. While this evidence might have tarnished Cloud's image, we cannot say that its ad-

mission, with or even without a limiting instruction, rendered the hearing unfair. The evidence was clearly of probative value.

. ■ Cloud asserts that testimony by a witness shielded from Cloud's view violated the PSC's guarantee of "the right to confront and cross examine any witness." The Supreme Court, however, has stated that "an adequate opportunity for cross-examination may satisfy the [sixth amendment confrontation] clause even in the absence of physical confrontation." *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). Cloud was given an opportunity to cross-examine the witness, and his attorney and the Judicial Committee were permitted to view the witness. We believe the Hearing Examiner had discretion to make the protective ruling in question.

Cloud also contends that the anonymous testimony was prejudicial because the Judicial Committee was given the impression that Cloud was a threat to the witness. While there may have been some prejudice to Cloud, the Hearing Examiner found the balance of the equities favored protecting the witness's identity. The Hearing Examiner's decision to permit the witness to testify out of Cloud's sight because of her frightened and nervous state did not render the hearing unfair or violate any contractually required procedures.

■10] Cloud argues that the Hearing Examiner, Mr. Srager, was biased, thus violating the contractual right to an "impartial judicial body." The guarantee of an impartial judicial body pertains to the Judicial Committee, not the Hearing Examiner, but we may assume that, in some cases, a Hearing Examiner could be so biased as to destroy the fairness of the hearing. The bias alleged by Cloud does not reach such a level. Srager's review of the university's letter suspending Cloud did not constitute a "previous adverse position" as Cloud argues. Srager's review of the letter in-

---

**2.** *Coveney* implied that when a hearing is held, it must be conducted fairly. 388 Mass. at 20,

445 N.E.2d at 139.

formed him of the events prior to the hearing, but *Coveney* specifically rejected a similar challenge to a hearing's fairness. 388 Mass. at 22, 445 N.E.2d at 140. We also find no merit in Cloud's contention that Srager's statement reflecting respect for the Dean of Student Life demonstrated an inability to make impartial decisions.

■ Finally, Cloud objects to the university's failure to produce employees whose testimony was requested by Cloud. The PSC does not guarantee a student subpoena powers, and Cloud was provided the opportunity to present his own witnesses and to cross-examine the university's witnesses. Failure of the university to produce the witnesses requested by Cloud, whose relevance and importance are far from obvious, did not violate the fairness standard of *Coveney.*[3]

Since we find Cloud's challenges to his disciplinary hearing insubstantial, we uphold the grant of summary judgment on his breach of contract claim.

### III.

■ We now consider Cloud's claim that the university violated his statutory right to privacy by placing the transcript of his prior rape trial on file for the student body to review. The Massachusetts privacy statute provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." Mass.Gen. Laws ch. 214, § 1B. This statute is considered "a matter of judicial law." Comment to Mass.Gen.Laws ch. 214, § 1B. The few Massachusetts cases in this field indicate that the main issue here is whether the transcript can be deemed private. *See Kelley v. Post Publishing Co.,* 327 Mass. 275, 98 N.E.2d 286 (1951) (no right of privacy in a photograph of dead body of plaintiff's daughter). Cloud himself revealed his conviction on January 18, 1982 in publicly resigning from the presidency of the Student Bar Association. The law school dean made the transcript public on February 3, 1982. Further, the transcript was a public record

available from the Maryland courts. Given these facts, the university did not violate Cloud's privacy rights by placing the transcript in an open file. Thus the district court did not err in granting summary judgment on Cloud's privacy claim.

*Affirmed.*

---

3. Cloud's claim regarding the university's failure to provide a copy of a security officer's report in advance of the hearing is similarly meritless.