Sharon L. RUSSELL,
Plaintiff, Appellee,

v.

SALVE REGINA COLLEGE, et als.,
Defendants, Appellants.

Sharon L. RUSSELL,
Plaintiff, Appellant,

v.

SALVE REGINA COLLEGE, et als.,
Defendants, Appellees.

Nos. 89–1564, 89–1597.

United States Court of Appeals,
First Circuit.

Heard Oct. 3, 1989.
Decided Nov. 20, 1989.

TIMBERS, Circuit Judge:

This consolidated appeal arises from the stormy relationship between Sharon L. Russell ("Russell") and Salve Regina College of Newport, Rhode Island ("Salve Regina" or "the College"), which Russell attended from 1982 to 1985. The United States District Court for the District of Rhode Island, Ronald R. Lagueux, *District Judge*, entered a directed verdict for Salve Regina on Russell's claims of invasion of privacy and intentional infliction of emotional distress at the close of plaintiff's case-in-chief, but allowed Russell's breach of contract claim to go to the jury.[1] The jury found that Salve Regina had breached its contract with Russell by expelling her. The court entered judgment on the verdict, denying Salve Regina's motions for judgment n.o.v. and for a new trial. The court also denied Salve Regina's motion for remittitur of the damages of $30,513.40 plus interest, a total of $43,903.45, that the jury awarded Russell.

On appeal Russell contends that, because a reasonable jury could have found invasion of privacy and intentional infliction of emotional distress under Rhode Island law, the district court erred in entering a directed verdict on those claims. Salve Regina contends that the judgment that it breached its contract with Russell should be reversed because: (1) the court erred as a matter of law in its analysis of the contract between a student and the college she attended; and (2) even accepting the court's formulation, there was insufficient evidence to support the jury verdict. It also argues that the calculation of damages was incorrect as a matter of law.

For the reasons set forth below, we affirm the judgment of the district court in all respects.

Steven E. Snow, with whom Partridge, Snow & Hahn, Providence, R.I., was on brief for Salve Regina College, et als.

Edward T. Hogan, with whom Hogan & Hogan, East Providence, R.I., was on brief for Sharon L. Russell.

Before BOWNES and TORRUELLA, Circuit Judges, and TIMBERS,* Senior Circuit Judge.

---

* Of the Second Circuit, sitting by designation.

1. This action originally was assigned to then-District Judge Bruce M. Selya. Judge Selya granted summary judgment in favor of the individual defendants on all counts and in favor of Salve Regina on five counts of Russell's complaint: due process, handicapped discrimination, negligent infliction of emotional distress, wrongful discharge and breach of covenant of good faith. Russell does not raise the granting of summary judgment as to any of these counts on appeal. Judge Selya denied summary judgment on the three claims that are the subject of this appeal. *Russell v. Salve Regina College,* 649 F.Supp. 391 (D.R.I.1986).

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

By all accounts, Sharon Russell was an extremely overweight young woman. In her application for admission to Salve Regina, Russell stated her weight as 280 pounds. The College apparently did not consider her condition a problem at that time, as it accepted her under an early admissions plan. From the start, Russell made it clear that her goal was admission to the College's Nursing Department.

Russell completed her freshman year without significant incident and was accepted in the College's Nursing Department starting in her sophomore year, 1983–84. Her trauma started then.[2] The year began on a sour note when a school administrator told Russell in public that they would have trouble finding a nurse's uniform to fit her. Later, during a class on how to make beds occupied by patients, the instructor had Russell serve as the patient, reasoning aloud that if the students could make a bed occupied by Russell, who weighed over 300 pounds, they would have no problem with real patients. The same instructor used Russell in similar fashion for demonstrations on injections and the taking of blood pressure.

The start of Russell's junior year, 1984–85, coincides with the time school officials began to pressure her directly to lose weight. In the first semester, they tried to get Russell to sign a "contract" stating that she would attend Weight Watchers and to prove it by submitting an attendance record. Russell offered to try to attend weekly, but refused to sign a written promise. Apparently, she did go to Weight Watchers regularly, but did not lose significant weight. One of Russell's clinical instructors gave her a failing grade in the first semester for reasons which, the jury found, were related to her weight rather than her performance.[3]

According to the rules of the Nursing Department, failure in a clinical course generally entailed expulsion from the program. But school officials offered Russell a deal, whereby she would sign a "contract" similar to the one she rejected earlier, with the additional provision that she needed to lose at least two pounds per week to remain in good standing. The "contract" provided that the penalty for failure would be immediate withdrawal from the program. Confronting the choice of signing the agreement or being expelled, Russell signed.

Russell apparently lived up to the terms of the "contract" during the second semester by attending Weight Watchers weekly and submitting proof of attendance, but she failed to lose two pounds per week steadily. She was nevertheless allowed to complete her junior year. During the following summer, however, Russell did not maintain satisfactory contact with College officials regarding her efforts, nor did she lose any additional weight. She was asked to withdraw from the nursing program voluntarily and she did so. She transferred to a program at another school.[4] Since that program had a two year residency requirement, Russell had to repeat her junior year, causing her nursing education to run five years rather than the usual four. Russell completed her education successfully in 1987 and is now a registered nurse.

Soon after her departure from Salve Regina, she commenced the instant action which led to this appeal.

2. The facts recited here, which relate primarily to the distress and privacy claims that were the subject of the directed verdict, must be viewed in the light most favorable to Russell. *Bennett v. Public Service Co.*, 542 F.2d 92 (1st Cir.1976).

3. Significantly, Russell's other clinical instructor that semester considered her performance outstanding. In addition, Russell's academic record indicates at least satisfactory performance in all courses except the clinical one that she failed.

4. Although the record is unclear, it appears that the College told Russell that she would not be eligible to register for her senior year, but could apply for a change of status if she met the College's conditions. Russell instead chose to transfer. At any rate Salve Regina does not dispute that Russell's departure was not truly "voluntary".

## II.

Subject matter jurisdiction over this case is based on diversity of citizenship. 28 U.S.C. § 1332 (1988). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 (1988). The parties do not dispute that the law of Rhode Island applies to all substantive aspects of the case.

We discuss first in section II of this opinion the two claims with respect to which the district court directed a verdict in favor of the College. Then in section III we discuss the contract claim which was submitted to the jury.

### (A) *Intentional Infliction of Emotional Distress*

■ Rhode Island recognizes this tort theory. It has adopted as its standard § 46 of the Restatement (Second) of Torts (1965). *Champlin v. Washington Trust Co.*, 478 A.2d 985 (R.I.1984). Section 46 states that:

"[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

Restatement (Second) of Torts § 46.[5] Rhode Island has added the requirement of at least some physical manifestation. *Curtis v. State Dep't for Children*, 522 A.2d 203 (R.I.1987). Russell has alleged nausea, vomiting, headaches, etc., resulting from the College's conduct. This appears to create a triable issue on the causation and harm elements of the theory. The issue on appeal, therefore, is whether the conduct alleged is sufficiently extreme and outrageous.

■ In its argument that the conduct of its employees does not rise to the necessary threshold, the College in essence concedes a pattern of harassment, but argues that the conduct was merely discourteous and necessary to carry out its academic mission.[6] We have no doubt that the conduct was insensitive, but to be tortious it must be "atrocious, and utterly intolerable in a civilized community". *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1021 (1st Cir.) (construing Rhode Island law and quoting Restatement, *supra*, § 46, comment d), *cert. denied*, 109 S.Ct. 65 (1988). Without regard to context, the College is correct; a series of insults, even if ongoing and systematic, is insufficient. But the context—the relationship of the plaintiff to the defendant and the knowledge of plaintiff's special sensitivities—is a necessary element of the tort. Prosser and Keeton, The Law of Torts, § 12, at 64 (5th ed. 1984). The school officials knew very quickly that Russell wanted badly to become a nurse and that she was easily traumatized by comments about her weight; yet they harassed her continuously for almost two years.[7] In this context, comments by school officials about weight were doubly hurtful.

---

5. Russell does not allege that the administration of Salve Regina intended to harm her, but rather that they hounded her without regard to the consequences.

6. Regarding the latter point, the College correctly states that both the Restatement and Rhode Island law may excuse otherwise tortious conduct if taken to protect legitimate interests. *Champlin, supra*, 478 A.2d at 988; Restatement, *supra*, § 46, comment g. The example provided is that of a heartless landlord exercising his privilege to evict a destitute family for nonpayment of rent. *Id.*, comment g, illustration 14. It is unable, however, to specify the interest served beyond "educational standards". We are unable to see what interest would be served by the petty, mean-spirited and concerted conduct in question. If anything, the interest of a college faculty and administrators should be the creation of an atmosphere of courtesy and tolerance.

7. Salve Regina claims that an illustration set forth in the Restatement closely parallels this case:

"A is an otherwise normal girl who is a little overweight, and is quite sensitive about it. Knowing this, B tells A that she looks like a hippopotamus. This causes A to become embarrassed and angry. She broods over the incident, and is made ill. B is not liable to A." Restatement, *supra*, § 46, comment f, illustration 13.

In view of the ongoing nature of the conduct in the instant case, as well as the control Salve Regina held over Russell's professional future, the comparison to an isolated remark, even one made with knowledge of special sensitivity, is disingenuous.

488

Even considering the context and acknowledging this to be a close question, however, we affirm the district court's directed verdict dismissing the claim. "Extreme and outrageous" is an amorphous standard, which of necessity varies from case to case. The College's conduct may have been unprofessional, but we cannot say that it was so far removed from the bounds of civilization as not to comply with the test set forth in § 46. Russell's commendable resiliency lends support to our conclusion.

### (B) *Invasion of Privacy*

In Rhode Island, this tort is purely statutory; so we refer primarily to the statute itself, especially in light of the lack of case law interpreting the text. The relevant provision, R.I.Gen.Laws § 9–1–28.1 (a)(1) (1985 Reenactment), covers only "*physical* solitude or seclusion" (emphasis added).[8] The conduct at issue here does not fit easily within the scope of that language, since all of it occurred in public. The only area "invaded" was Russell's psyche. We cannot lightly predict that the Rhode Island Supreme Court would interpret the statute contrary to its literal language, in view of the statement of that Court that it will give statutory language its plain meaning absent compelling reasons to the contrary. *Fruit Growers Express Co. v. Norberg*, 471 A.2d 628 (R.I. 1984). We therefore affirm the district court's directed verdict on the invasion of privacy count.

### III.

Russell's breach of contract claim is the only one the district court submitted to the jury. The College does not dispute that a student-college relationship is essentially a contractual one. *E.g., Lyons v. Salve Regina College*, 565 F.2d 200 (1st Cir.1977), *cert. denied*, 435 U.S. 971 (1978). Rather, it challenges the court's jury charge regarding the terms of the contract and the duties of the parties.

From the various catalogs, manuals, handbooks, etc., that form the contract between student and institution, the district court, in its jury charge, boiled the agreement between the parties down to one in which Russell on the one hand was required to abide by disciplinary rules, pay tuition and maintain good academic standing,[9] and the College on the other hand was required to provide her with an education until graduation. The court informed the jury that the agreement was modified by the "contract" the parties signed during Russell's junior year. The jury was told that, if Russell "substantially performed" her side of the bargain, the College's actions constituted a breach.

The College challenges the court's characterization of the contract. It claims the court ignored relevant provisions of publications from the Nursing Department; for example, those relating to the need for nurses to be models of health for their patients. These provisions, it argues, demonstrate that Russell was aware that success as a nursing student demanded more than competent performance. We hold, however, that the provisions on health speak to the duty of students to inform the Department of hidden health problems that might affect the students or their patients, and they are not a license for administrators to decide late in the game that an obese student is not a positive model of health.[10]

---

8. A separate section of Rhode Island's Privacy Law provides the "right to be secure from unreasonable publicity given to one's private life." R.I.Gen.Laws. § 9–1–28.1(a)(3) (1985 Reenactment). Recovery is available, however, only if a private fact is disclosed. The only material fact here, Russell's obesity, of course was quite public.

9. There is no dispute that Russell met these criteria, with the exception of the clinical course she failed because of her weight.

10. Judge Selya stated that "[c]ontagion was not legitimately at issue—after all, there is no allegation of communicable corpulence here—nor have the defendants essayed any showing that clinical work would have jeopardized Russell's own wellbeing." *Russell, supra*, 649 F.Supp. at 405.

Salve Regina also challenges the application of strict commercial contract principles, *e.g.*, that, if Russell substantially performed, the College had an absolute duty to educate her.[11] It cites several cases which hold that colleges, in order properly to carry out their functions, must be given more contractual leeway than commercial parties. *E.g., Lyons, supra*, 565 F.2d at 202 (dean may reject faculty recommendation to reinstate student); *Slaughter v. Brigham Young Univ.*, 514 F.2d 622 (10th Cir.), *cert. denied*, 423 U.S. 898 (1975); *Clayton v. Trustees of Princeton Univ.*, 608 F.Supp. 413 (D.N.J.1985) (university must have flexibility to discipline cheating students). There can be no doubt that courts should be slow to intrude into the sensitive area of the student-college relationship, especially in matters of curriculum and discipline. *Slaughter, supra*, 514 F.2d at 627 ("substantial performance" standard is intolerable when it allows student to get away with "a little dishonesty").

■■■■ The instant case, however, differs in a very significant respect. The College, the jury found, forced Russell into voluntary withdrawal because she was obese, and for no other reason. Even worse, it did so after admitting her to the College and later the Nursing Department with full knowledge of her weight condition. Under the circumstances, the "unique" position of the College as educator becomes less compelling. As a result, the reasons against applying the substantial performance standard to this aspect of the student-college relationship also become less compelling. Thus, Salve Regina's contention that a court cannot use the

substantial performance standard to compel an institution to graduate a student merely because the student has completed 124 out of 128 credits, while correct, is inapposite. The court may step in where, as here, full performance by the student has been hindered by some form of impermissible action. *Slaughter, supra*, 514 F.2d at 626.

In this case of first impression, the district court held that the Rhode Island Supreme Court would apply the substantial performance standard to the contract in question. In view of the customary appellate deference accorded to interpretations of state law made by federal judges of that state, *Dennis v. Rhode Island Hospital Trust Nat'l Bank*, 744 F.2d 893, 896 (1st Cir.1984); *O'Rourke v. Eastern Air Lines Inc.*, 730 F.2d 842, 847 (2d Cir.1984), we hold that the district court's determination that the Rhode Island Supreme Court would apply standard contract principles is not reversible error.

IV.

Salve Regina argues that the $25,000 damages awarded to Russell (the equivalent of a year's salary) constitutes legal error.[12] It contends that she is entitled to $2,000, representing her net savings after one year of employment. We disagree.

■■■ Since there appears to be no case law on this precise point,[13] we turn to familiar principles of contract law. The purpose of a contract remedy is to place the injured party in as good a position as it would have been in had the breach not occurred. *Rhode Island Turnpike and Bridge Auth. v. Bethlehem Steel Corp.*, 119 R.I. 141, 379 A.2d 344, 357 (1977). Since each case turns on the specific facts

11. The College also argues that the jury finding of substantial performance is not supported by the record. We hold that the record demonstrates that the finding is not clearly erroneous.

12. The remaining damages, $5,513.40, constitute the costs incurred for Russell's additional year in college.

13. The College's reliance on *Slaughter, supra*, is unavailing. The *Slaughter* court merely held that, because the substantial performance standard was inapplicable on the facts, it was improper to award the plaintiff the amount he would have earned had he received his doctorate earlier. 514 F.2d at 626. We are faced with the reverse situation: substantial performance in fact and proper application of the standard.

at hand, we consider it appropriate to accord the district court reasonable leeway. 5 Corbin on Contracts § 992 (1964 ed.).

■ Here, the district court's jury charge stated specifically that the proper remedy for the breach in question would be a year's salary. We cannot say that this was incorrect as a matter of law. The contract between Salve Regina and Russell was not motivated by economic concerns, at least on Russell's part; yet its breach clearly damaged Russell. She lost a year of her professional life. Under the circumstances, the salary Russell would have earned in that lost year strikes us as hardly a windfall. Moreover, the most closely analogous cases, involving damages for wrongful employment termination, hold that a plaintiff is entitled to the full salary, less any amount he was under a duty to mitigate. 5 Corbin, *supra,* § 1095 (collecting cases). We therefore affirm the damage award.

## V.

To summarize:

We hold that the district court properly granted a directed verdict in favor of Salve Regina on the intentional infliction of emotional distress and invasion of privacy counts. We affirm the judgment in favor of Russell on the breach of contract count. We also affirm the damage award on the contract count.

AFFIRMED.