# DAVID ARLEN SCHAER *VS.* BRANDEIS UNIVERSITY & others.[1]

No. 97-P-1868.

Middlesex. May 11, 1999. - September 30, 1999.

Present: KASS, PORADA, & LENK, JJ.

Further appellate review granted, 430 Mass. 1112 (1999).

*Education,* Private colleges and universities, Disciplinary matter. *Due Process of Law,* Private college. *Contract,* Private college. *Privacy.*

Discussion of cases considering academic and disciplinary decisions made by private colleges and universities and the standard applicable thereto. [26-28]

A complaint filed by a student against a private university stated a claim that the university did not conduct its disciplinary proceeding with respect to the student in conformance with its code of student rights and responsibilities by failing to investigate, failing to make a record of the proceedings, receiving evidence which was without foundation and unfairly prejudicial, failing to apply a standard of clear and convincing evidence, and failing to accord the process due under the code; a Superior Court judge erred in dismissing that claim under Mass.R.Civ.P. 12(b)(6). [28-30]

CIVIL ACTION commenced in the Superior Court Department on June 4, 1996.

The case was heard by *Herman J. Smith, Jr.,* J., on a motion to dismiss.

*David M. Lipton* for the plaintiff.

*Alan D. Rose* for the defendants.

KASS, J. As framed, the charges upon which Brandeis University (Brandeis) disciplined David Arlen Schaer, a third-year undergraduate, were (1) engaging in unwanted sexual activity; and (2) creating a hostile environment for the accuser, both offenses in violation of the rights and responsibilities section of the student handbook. The university board on student conduct found Schaer to have committed those infractions and disci-

---

[1]Alwina Bennett, Rod Crafts, and Rick Sawyer, who are administrators at Brandeis University, and Esther Ratner, Victor Luftig, Richard Lansing, and Hugh Pendleton, members of the faculty.

plined him with a three-month suspension and by placing him on disciplinary probation for his last college year. On appeal the parties present questions about the availability and extent of judicial review of a private university's disciplining of one of its students.

Schaer filed a seven count complaint in Superior Court asking for injunctive relief and compensatory damages; the former was denied and, thereafter, the complaint as a whole was dismissed for failing to state a claim for which relief can be granted. Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). We affirm in part and reverse in part that disposition.

Stripped of euphemism, Brandeis's complaint against Schaer was that he raped a fellow student; i.e., the accusing student said that after some foreplay she had told Schaer she "did not want to have sex" and then, while awakening from sleep, found Schaer inside her.[2] Schaer's response was that the sexual intercourse in which he had engaged with his accuser was not merely consensual, but had been urgently and ardently invited by her. He asked for and received a hearing before the university board on student conduct (board). That board consisted of six students (counting the chairperson as a student — the record is not clear on the point) and two faculty members.[3] Thirteen witnesses (including the principals) appeared before the board. As noted, the board found Schaer responsible for the violations charged. The sanction of suspension bridged the summer recess but forbade Schaer's being on Brandeis property. That sanction was not without consequence because Schaer had intended to spend the summer continuing work on a biomedical research project in a Brandeis laboratory. In addition, the board ordered

---

[2] The texts of the sections of the student handbook rights and responsibilities code that Schaer was said to have violated are as follows:

"2.1 [A student is expected and required to] respect the integrity and personal rights of others. Intimidation of, threats to, physical abuse of, or harassment . . . which threatens or endangers the health, safety or welfare of a member of the University community is unacceptable."

"6.3 At Brandeis University, any faculty member, employee, or student who sexually harasses a member of the University community shall be subject to disciplinary action, up to and including termination of employment or dismissal of a student from the University. Sexual harassment includes unwelcome sexual advances, requests or demands for sexual favors, and other verbal or physical conduct of a sexual nature."

[3] Rick Sawyer, associate dean of students and director of campus life, acted as "adviser of the board."

Schaer on probation for the balance of his "time as a student at Brandeis"; to avoid any and all contact with his accuser; and to "[u]ndergo appropriate professional counseling and provide proof of same to the Dean of Student Affairs." Schaer filed a request for a new hearing before the university appeals board on student conduct (appeals board). The appeals board "did not find sufficient merit in [Schaer's] written presentation to grant a new hearing."[4]

These events occurred in the winter and spring of 1996, i.e., the encounter was in the early hours of February 14, and the appeals board denied rehearing on May 13, 1996. By now, Schaer would either have graduated or completed his undergraduate work elsewhere. There is no suggestion of mootness, however, because there are claims of money damages and, more significantly, because notation of the board's decision in Schaer's student record has potential for harming his career. See *Greene* v. *Howard Univ.*, 412 F.2d 1128, 1130-1131 (D.C. Cir. 1969); *Clayton* v. *Trustees of Princeton Univ.*, 608 F. Supp. 413, 436 (D.N.J. 1985), quoting from an earlier decision involving an earlier phase (summary judgment) of the same case reported at 519 F. Supp. 802, 805 (D.N.J. 1981); Note, Common Law Rights for Private University Students, 84 Yale L.J. 120, 129 (1974).

Schaer's complaint is anything but a "short and plain statement of the claim." Mass.R.Civ.P. 8(a)(1), 365 Mass. 749 (1974). It sends 125 paragraphs sprawling over thirty-four pages. One gets the point; Schaer alleges that the Brandeis disciplinary process was fundamentally unfair. That is not a promising claim as the student manual attached as an exhibit to the complaint describes a procedure that is manifestly adequate for a private association. There are, however, more specific allegations that Brandeis in Schaer's case did not abide by the rules it set for itself and students in the rights and responsibilities code (code). Those are:

(a) Brandeis failed, prior to bringing the complaint against Schaer before its "judicial system," to make a careful evaluation of the facts and of the credibility of persons reporting them as required by § 17 of the code[5];

(b) The board failed to make a record of the proceedings, as required by § 19.14 of the code;

---

[4]By this time Schaer had employed counsel and he had the assistance of counsel in requesting a hearing by the appeals board.

[5]The complaint paints with a broader brush and says on this point, "No investigation was made before the charge was issued."

(c) The hearing panel received irrelevant and inflammatory testimony and arbitrarily excluded relevant evidence, in violation of § 19.13 of the code;

(d) The hearing panel failed to apply the "clear and convincing evidence" standard established for decision making by § 19.13 of the code;

(e) The hearing panel and its advisor failed woefully in according Schaer the procedural due process required by § 18.11 of the code.

Those five allegations, and the inferences to be drawn from them, must be taken as true for purposes of deciding whether the dismissal under rule 12(b)(6) was correct. *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). *McCone* v. *New England Tel. & Tel. Co.*, 393 Mass. 231, 232 (1984). *Blieden* v. *Blieden*, 14 Mass. App. Ct. 959, 961 (1982). We proceed to consider whether, on the five allegations, Schaer can prove any set of facts that would entitle him to relief. *General Motors Acceptance Corp.* v. *Abington Cas. Ins. Co.*, 413 Mass. 583, 584 (1992). *Pucci* v. *Amherst Restaurant Enterprises, Inc.*, 33 Mass. App. Ct. 779, 783 (1992). We shall touch summarily on some of the other counts in the complaint.

1. *Failure to comply with Brandeis's code.* Courts are chary about interfering with academic and disciplinary decisions made by private colleges and universities. See *Russell* v. *Salve Regina College*, 890 F.2d 484, 489 (1st Cir. 1989), rev'd on other grounds, 499 U.S. 225 (1991), reinstated, 938 F.2d 315 (1st Cir. 1991); *Clayton* v. *Trustees of Princeton Univ.*, 608 F. Supp. at 437-438. See also *Curators of the Univ. of Mo.* v. *Horowitz*, 435 U.S. 78, 87 (1978). Cf. *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 19 (1983); *Cloud* v. *Trustees of Boston Univ.*, 720 F.2d 721, 724 (1st Cir. 1983). It is a deference born of respect for the independence of private associations and disinclination by courts to be drawn into their internal governance. See Chafee, The Internal Affairs of Associations Not for Profit, 43 Harv. L. Rev. 993, 1021-1029 (1930).[6] Reluctance of courts to become involved in student discipline diminishes as the subject matter graduates from academic issues to misconduct. *Curators of the*

---

[6]Professor Chafee refers to this consideration as the Living Tree Policy. If the association has a very direct bearing on the member's career, e.g., membership in a medical association, the Living Tree Policy may give way to the Strangle-hold Policy. See also his discussion of the bearing of the Dismal

*Univ. of Mo.* v. *Horowitz*, 435 U.S. at 87-91. *Barnard* v. *Shelburne*, 216 Mass. 19, 22 (1913) (involving a public high school but making the academic failure/misconduct distinction). *Napolitano* v. *Trustees of Princeton Univ.*, 186 N.J. Super. 548, 567 (App. Div. 1982). *Tedeschi* v. *Wagner College*, 49 N.Y.2d 652, 658 (1980). Swem, Due Process Rights in Student Disciplinary Matters, 14 J.C. & U.L. 359, 361-364 (1987). So, for example, a court is most unlikely to adjudicate whether an examination has been graded fairly or a student has been fairly placed on probation by reason of poor academic performance. Plagiarism is more an academic than societal offense. *Napolitano* v. *Trustees of Princeton Univ.*, 186 N.J. Super. at 569-570. If a student is disciplined for defacing college property or postgame brawling, the degree of deference will still be very considerable because this involves concerns peculiar to the educational institution. Should the student, however, be suspended or expelled for misconduct, such as theft or — as here — rape, the subject matter is not only familiar to courts but mars the record of the student in a manner that is likely to have serious consequences for the student in admission for graduate study or competition for a job. See *Greene* v. *Howard Univ.*, 412 F.2d at 1130-1131; *Clayton* v. *Trustees of Princeton Univ.*, 608 F. Supp. at 436; Note, Common Law Rights for Private University Students, 84 Yale L.J. at 129. See also *Rutledge* v. *Gulian*, 93 N.J. 113, 118-119 (1983) (speaking of valuable relationship that a person has to the institution).

In *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. at 19-20, the court applied as the standard of review whether the college, in dismissing a student for misconduct, had acted arbitrarily or capriciously. In that case, decided on a motion for summary judgment, it was undisputed that the student had committed a serious infraction of college rules (there, too, the offense was sexual in nature) and the dispute was only about whether expulsion was justified. The degree of discipline, the court concluded, was within the discretion of the institution and a hearing before the president was adequate; there was no inherent requirement for a hearing with the trappings of procedural due process, e.g., right to counsel, right to confront witnesses, right to cross-examination, etc. *Id*. at 21-22. See *Goss* v. *Lopez*, 419 U.S. 565, 583 (1975).

Swamp Policy and the Hot Potato Policy on judicial intervention. 43 Harv. L. Rev. at 1021-1029.

The *Coveney* opinion neither dismisses the idea that a student at a private university in certain circumstances is entitled to a hearing nor forgoes the duty of a court to examine whether the disciplinary proceedings, including the hearing, have been conducted with basic fairness. *Coveney, supra* at 20. *Cloud* v. *Trustees of Boston Univ.*, 720 F.2d at 725 & n.2. That hearing should be appropriate to the nature of the case, *Goss* v. *Lopez,* 419 U.S. at 579, and, therefore, must be conducted with greater care, and will be reviewed by a court with greater scrutiny, when the underlying offense is one that society would regard severely, e.g., theft, distribution of drugs, or rape. When a university (or, more generally, a private association) provides for hearings in a university code, such as the rights and responsibilities code at Brandeis, the student is entitled to a hearing, and adjunct proceedings, that substantially observe the institution's code. *Coveney, supra* at 21-22, seems to recognize that principle. Although adherence to a student manual in some of the cases is founded on a theory of contract, see *Russell* v. *Salve Regina College*, 890 F.2d. at 489; *Mangla* v. *Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998), it may be wiser, as the court suggests in *Tedeschi* v. *Wagner College*, 49 N.Y.2d at 659-660, to think in terms of the common-law right of a member of an association not to be dismissed or otherwise disciplined without substantial adherence to that association's rules. Compare *Clayton* v. *Trustees of Princeton Univ.*, 608 F. Supp. at 435; *Rutledge* v. *Gulian*, 93 N.J. at 118-119. The idea was anticipated more than a century ago in *Gray* v. *Christian Soc.*, 137 Mass. 329, 331 (1884), in which the court said that it is a requirement of common justice that a person not be deprived of membership in a society, except in accordance with its rules and, in that case, a fair hearing. See *Spilman* v. *Supreme Council of the Home Circle*, 157 Mass. 128, 130-131 (1892). See also Note, Common Law Rights for Private University Students, 84 Yale L.J. at 132-140. The principle of adherence to an institution's self-prescribed procedures does not require rigid compliance. *Slaughter* v. *Brigham Young Univ.*, 514 F.2d 622, 626 (10th Cir.), cert. denied, 423 U.S. 898 (1975). The cases do not, and we do not, require adherence to process consistent with basic fairness on Federal or State constitutional imperatives, but on the common-law rules we have discussed.

Schaer, therefore, was entitled to a hearing that substantially, but not rigidly, observed the procedures laid out in Brandeis's

code. We examine next whether Schaer's complaint, indulgently read, *Federico* v. *Brockton Credit Union*, 39 Mass. App. Ct. 57, 61 (1995), states a claim that Brandeis did not substantially conform its disciplinary process in Schaer's case to the code.

a. Failure to make careful evaluation of the facts and of the credibility of persons reporting them, as required by § 17 of the code. Nothing in the record, which is larger than one might suppose on a rule 12(b)(6) motion because the plaintiff attached voluminous materials as exhibits to the complaint, bears on who evaluated what the accuser said, how that was done, who was spoken to, and whether any credibility assessment had been made. According to the complaint, nobody interviewed Schaer before the proceedings were launched. If those preliminary inquiries, in the nature of testing for probable cause, were not made or wholly superficially made, Schaer may have been unwarrantably placed on trial in what the complaint describes as a superheated atmosphere. On a failure to state a claim basis, this aspect of the complaint was not ripe for dismissal.

b. Failure to make a record of the proceedings of the board, as required by § 19.14. There were thirteen witnesses. Only what the "accuser" and "accused" said was summarized in highly compressed form: five and one-half lines for her; six lines for him. The hearing, according to the complaint, lasted five and one-half to six hours. The failure to make an adequate record is not inconsequential. It bears on the care with which the tribunal analyzed what was before them and it bears on what Schaer had to present in his application for an appeal to the appeals board. Schaer was entitled to probe, through discovery, his allegation that the incompleteness of the record that was made worked to his prejudice.

c. Receipt of irrelevant and inflammatory evidence, in violation of § 19.13 of the code. That section provides that decisions of the board shall be made solely upon evidence and testimony introduced at the hearing. While we do not intimate that court rules of evidence are to be imported to university disciplinary proceedings, § 19.13 implies a minimum level of competence. The complaint states that a Brandeis police officer was allowed to testify that when she saw the complainant one month after the encounter, "She looked like a rape victim." On what possible basis a police officer could know such a thing does not appear. Another witness was allowed to give his opinion that Schaer was "a self-motivated egotistical bastard who had no

respect for women." Both statements are so without rudimentary foundation and so unfairly prejudicial that they can be said to be in violation of § 19.13.

d. Failure to apply "clear and convincing evidence" standard prescribed by § 19.13 of the code. What, according to the complaint, Brandeis passes off as a record discloses no more than "she said" against "he said." The plaintiff's allegation that the clear and convincing evidence standard was not adhered to states a claim that Schaer is entitled to explore; i.e., what evidence did the board consider clear and convincing.

e. Failure to accord Schaer the process due under § 18.11 of the code. There is nothing in the complaint that supports a conclusion that the plaintiff could not possibly adduce evidence tending to prove his allegation in the complaint that the advisor to the board did nothing, or was not able to do anything, to advise the board, as § 18.11 provides, "regarding the requirements and provisions of substantive and procedural due process." If, indeed, the board, three-quarters of which consisted of students, were not so advised, it might have had a significant impact on how they went about adjudicating the accusation that had been brought. Once again, the issue could not be flicked away on a motion under rule 12(b)(6).

In the end, Schaer may not strike any pay dirt through affidavits and discovery, and Brandeis, in connection with a motion for summary judgment, may be able to adduce uncontradicted evidence that it substantially complied with its own procedures or that such failures to comply as occurred were without consequence to Schaer. That was not the case at the rule 12(b)(6) stage and it was error to allow the motion to dismiss on the basis of a failure to state a claim for which relief can be granted.

2. *Other claims.* We deal with Schaer's other claims in summary form.

a. The count claiming intentional infliction of emotional harm was not argued in Schaer's brief and we treat it as waived. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

b. There was no actionable misrepresentation by the defendant Bennett by reason of her failing to have tipped off Schaer that the accuser had already lodged a complaint against him. We do not import the requirements of *Miranda* v. *Arizona,* 384 U.S. 436 (1966), to Brandeis.

c. There was no interference by the defendants with

contractual relations. Yes, Schaer had an associational connection with Brandeis but Brandeis, as a party to that connection, could not be a third party interfering with it. All other parties acted in the course of their duties and nothing in the complaint alleges any improper motive incident to their work.

d. The complaint alleges no threats, intimidation, or coercion and the claim under G. L. c. 12, §§ 11H and 11I, fails. Brandeis's notifying Schaer of an accusation and a disciplinary proceeding is not the kind of "direct assault" upon the exercise of a protected right that the State punishes. *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 719 (1989). Contrast *Redgrave* v. *Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 100 (1987).

e. There is nothing in the complaint that sustains a claim of violation of privacy rights, contrary to G. L. c. 214, § 1B. Brandeis was duty bound to inquire into the complaint made that Schaer had violated the code. Brandeis had a legitimate countervailing interest in disclosing facts of a personal and intimate nature. *Mulgrew* v. *Taunton*, 410 Mass. 631, 637 (1991).

The dismissal of count three of the complaint is vacated and the judgment reversed. Judgments of dismissal of the remaining counts of the complaint are affirmed.

*So ordered.*