Sherman, RJ.
This is an action for legal malpractice in the defendant’s handling of mortgage foreclosure and deficiency proceedings for the plaintiff, the mortgagee’s assignee. Judgment was entered for the plaintiff, and the defendant filed this Dist./Mun. Cts. RAD. A., Rule 8C appeal.
The foreclosure and deficiency proceedings at issue arose from the 1988 purchase by Ann C. Sollogub (“Ann”) of a condominium unit in Salem, Massachusetts. To finance the purchase, Ann and her brother, Peter Sollogub (“Peter”), obtained a $146,300.00 loan from the National Grand Bank (“the Bank”) and signed an “Adjustable Rate Note” which rendered them jointly and severally liable for the loan. On the same date, May 26, 1988, Ann executed a mortgage on the condominium unit as security for the note. Paragraph 11 of the note specifically referenced a mortgage instrument, and the mortgage expressly provided that it was given as security for the $146,300.00 debt evidenced by the note executed that date.[1] As Peter had no ownership or other interest in the condominium unit, exclusive title to which was taken in Ann’s name, Peter did not sign the mortgage.
By February, 1991, Ann and Peter had defaulted on their note payments. The Bank retained the defendant attorney to conduct foreclosure proceedings and to preserve the Bank’s post-foreclosure rights under the note and mortgage.
The defendant forwarded an initial notice of default and intent to foreclose to Ann on April 2, 1991.[2] On September 27, 1991, the defendant sent a G.L.C. 244, §17B[3] notice to Ann that the foreclosure sale of the condominium would be held on October 8, 1991, and that she would be liable for any deficiency remaining after foreclosure. The defendant did not send a statutory notice to Peter.
The plaintiff purchased the property at the October 8, 1991 auction for $75,000.00, which represented seventy-five percent (75%) of the appraised value of *122 the condominium. After foreclosure, the balance of principal, interest and charges due on Ann and Peter’s loan was $75,490.47.
On August 24,1992, the defendant attorney filed an action on behalf of the plaintiff against Ann and Peter. The action against Ann was dismissed pursuant to Dist./Mun. Cts. R. Civ. P, Rule 4(j) for lack of service and for the defendant attorney’s inability to show good cause for his failure to effect service within the required ninety days.[4] The defendant was subsequently discharged as plaintiff’s counsel, and withdrew his appearance on October 8,1992.
Peter thereafter filed a Dist./Mun. Cts. R. Civ. R, Rule 56 motion for summary judgment on the sole ground that the plaintiff’s action was barred by G.L.c. 244, §17B because of the plaintiff’s failure to send him a statutory notice of foreclosure and intent to pursue a deficiency. The court allowed Peter’s summary judgment motion, and the plaintiff did not appeal.[5]
This action for legal malpractice was commenced in June, 1993 to recover for the defendant’s negligence in foiling: (1) to send a G.L.c. 244, §17B notice to Ann within the prescribed twenty-one days; (2), to send any §17B notice to Peter and (3) to postpone the foreclosure sale to correct the deficiency notices. After trial, the court made extensive findings of fact and rulings of law that the defendant was liable in negligence for failing to send a §17B notice to Peter.[6] Judgment was entered for the plaintiff in the amount of $75,490.47 plus interest and costs.
There was no error.
*123 1. The plaintiff’s claim for legal malpractice required proof that the defendant attorney Med to exercise reasonable care and skill in handling the matter for which he was retained, that the plaintiff incurred a resulting loss, and that the attorney’s negligence was the proximate cause of such loss. Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, PC, 25 Mass. App. Ct. 107, 111 (1987); DiPiero v. Goodman, 14 Mass. App. Ct. 929 (1982). It is undisputed herein that the plaintiff satisfied its burden of proof on the elements of loss and causation. The record establishes that Peter was liable as a matter of law for the post-foreclosure balance of the loan, that he had sufficient financial assets to satisfy a judgment against him for the amount of that balance, and that the plaintiff’s claim for such recovery would have succeeded but for the defendants failure to satisfy the G.L.c. 244, §17B notice prerequisite to suit against Peter. Thus the dispositive issue at trial and on this appeal is whether the defendant’s neglect in not issuing a §17B deficiency notice to Peter constituted an actionable failure to exercise the “degree of care and skill of the average, qualified practitioner.” Fishman v. Brooks, 396 Mass. 643, 646 (1986).
2. There is no merit in the defendant’s primary contention that he was not required to issue a G.Lc. 244, §17B deficiency notice to Peter because Peter was not a mortgagor, and the civil action commenced against Peter was a breach of contract action for the balance due on a promissory note rather than a deficiency action to which §17B applied. Both of these arguments were rejected by the Appeals Court in IAG Federal Credit Union v. Laterman, 40 Mass. App. Ct. 116 (1996), a decision rendered two days before oral argument on this appeal in a virtually identical case. The Appeals Court held that a mortgagee was required to give a §17B notice not only to the sole mortgagor of record of the subject property, not a party to the IAG suit, but also to the defendant signatories of the promissory note secured by the mortgage who were not themselves mortgagors. The Court noted that §17B expressly mandated notice not to mortgagors, but to any “defendant sought to be charged with the deficiency,” which included the co-makers of a promissory note secured by a mortgage who would be liable for any balance remaining on the note after foreclosure. The court also rejected the largely semantic,al distinction between a deficiency action and one for monies due on the note, ruling that any post-foreclosure action for the balance due on an obligation secured by a mortgage was a deficiency action to which a §17B notice to the defendant was a condition precedent.[7]
3. The Appeals Court decision in IAG did not signal a departure from existing G.L.c. 244, §17B law, but was predicated on the plain language and established purpose of the statute, the statutory notice form, Id. at 118, and caselaw available to the defendant in 1988 at the time of the foreclosure sale at issue herein. Pursuant to such statute and caselaw, it is clear that a reasonably prudent attorney would have issued to Peter the statutory deficiency notice mandated by §17B.
Although Peter was not a mortgagor, he was the maker of a promissory note secured by a mortgage given by the note’s co-maker. Peter’s note was thus an “obligation secured by a mortgage of real estate” within the express purview of §17B. Peter was liable jointly and severally with his co-maker for any deficiency or balance due on such obligation after mortgage foreclosure. The established pur *124 pose of §17B is to protect both “mortgagors and ... those liable with them or through them on mortgage obligations.” Palumbo v. Audette, 323 Mass. 559, 560 (1949). Because the amount of his indebtedness was directly affected by the price obtained at a foreclosure sale, Peter was entitled to the opportunity afforded by a statutory notice “to attend the foreclosure sale and to bid or take other action to improve the sale price and thus eliminate or reduce any deficiency.” Wornat Develop. Corp. v. Vakalis, 403 Mass. 340, 345 (1988). Finally, Peter was in fact a “defendant sought to be charged with the deficiency.” The record herein amply supports the trial court’s finding that the defendant knew at all relevant times that the plaintiff intended to proceed against Peter to recover the deficiency.[8]
4. There was also no merit in the defendant’s final argument that the trial court’s inaction upon the defendant’s request for ruling that the evidence warranted a finding in his favor constituted a denial of such warrant request, see Caccavaro v. American Motorists Ins. Co., 355 Mass. 797 (1969), and that such implicit denial constituted reversible error. It is clear from the trial judge’s extensive findings and rulings herein that his ultimate finding for the plaintiff was based on his appropriate assessment as trier of fact of the weight and credibility of the evidence presented, and not on any erroneous ruling of law that the evidence was insufficient to permit a finding in the defendant’s favor. DiGesse v. Columbia Pontiac Co., 369 Mass. 99, 101 (1975); Bresnick v. Heath, 292 Mass. 293, 298 (1935). Indeed the court’s findings specifically reference evidence favorable to the defendant, including expert evidence offered by him as to the prevailing standard of practice of a reasonably qualified attorney.
Accordingly there being no error, the court’s judgment for the plaintiff is affirmed. Appeal dismissed.

 Paragraph 11 of the Note stated: “In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the ‘Security Instrument’), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.” The mortgage provided: ‘The Borrower owes Lender the principal sum of... $146,300.00. This debt is evidenced by Borrower’s note dated the same date as this Security Instrument... [which] secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; ... (c) the performance of Borrower’s covenants and agreements under this Security Instrument and the Note.”

 The Bank assigned its rights to the plaintiff in September, 1991.

 Section 17B of G.L.c. 244 provides: “No action for a deficiency shall be brought by the holder of a mortgage note or other obligation secured by a mortgage of real estate ... unless a notice in writing of the mortgagee’s intention to foreclose the mortgage has been mailed ... to the defendant sought to be charged with the deficiency ... together with a warning of liability for the deficiency, ... not less than twenty-one days before the date of the sale under power in the mortgage.”

 The court granted permission for the plaintiff to introduce additional materials demonstrating good cause for its failure to make timely service and to re-mark a motion to vacate the dismissal on the basis thereof. Although the defendant provided the plaintiff, at its request, with an affidavit as to the defendant’s efforts to locate and serve Ann, the plaintiff never re-marked its motion to vacate. Evidence was later introduced in this malpractice action that Ann lacked the financial resources to satisfy any deficiency judgment which the plaintiff might have obtained.

 The plaintiff would certainly have failed on any such appeal, as is evident from IAG Federal Credit Union v. Laterman, 40 Mass. App. Ct. 116 (1996), discussed infra.

 The court found, inter alia: ‘There is no question that the defendant failed to give Peter the statutory notice. By failing to do so, I find that the defendant failed to exercise the degree of care and skill required of the average qualified practitioner. The plaintiff incurred a loss because the Civil Action against Peter was dismissed on summary judgment. Finally, the defendant’s negligence was the proximate cause of that loss.... Even if there were no statutory obligation to serve notice on Peter, I find that a reasonably prudent lawyer would have done so. In hearing a malpractice case against an attorney, the court generally requires expert testimony to establish the standard of care owed a client and the defendant’s alleged departure from it. ... In this case, we have Attorney Feingold’s testimony that the exercise of reasonable care and skill required that Christensen would notify all persons chargeable for a deficiency. Attorney Strome testified to the contrary. I agree with Attorney Feingold. The defendant knew at all times that the Bank intended to proceed against Peter. The statute and the language in Palumbo are clear. Even if the statute and caselaw were unclear, a reasonable lawyer in an effort to resolve all questions in favor of his client, would have served notice on Peter.”

 “While initial action was one for monies due under two promissory notes, that was no longer the case once the foreclosure occurred. The bank was obligated to apply the foreclosure proceeds to the balance due under the notes. G.L.c. 183, §27. Once that was done, the action was converted to one to collect the deficiency remaining on the note after the foreclosure sale. The ’deficiency’ to which the statute refers is the one resulting from the failure to realize at a foreclosure sale the funds necessary to satisfy the obligation for which the mortgage is given as security. Palumbo v. Audette, 323 Mass. at 561.” IAG Federal Credit Union v. Laterman, supra at 118.

 The defendant’s reliance on Senior Corp. v. Perine, 16 Mass. App. Ct. 967 (1993) and Seronick v. Schonfeld, 26 Mass. App. Ct. 367 (1988) for a contrary result is misplaced. It was held in Senior Corp. that a guarantor under a separate instrument of a mortgage note was not entitled to a statutory deficiency notice because the guarantor’s liability was independent of the mortgage and was not directly contingent upon the results of the foreclosure action. Peter’s status was that of a co-maker whose obligation was directly secured by the mortgage. In Seronick, the Appeals Court re-affirmed the mortgagee’s established obligation to issue notice to any maker of the note targeted by the mortgagee as a defendant in a potential deficiency case, but noted that such mortgagee was not required to send notice to a co-maker against whom the mortgagee had no intention of proceeding in a deficiency action. As noted in this case, Peter was at all times targeted as a defendant in the plaintiffs deficiency action.