Merrick, PJ.
This is an action by Harvard University (“Harvard”) against a former student, defendant Jennifer Goldstein (“Goldstein”), for breach of contract to recover payment for her student housing. Goldstein counterclaimed in three counts for alleged breach of contract[1] and intentional infliction of emotional distress resulting from Harvard’s dropping her from a graduate program. After trial, judgment was entered for Harvard on its claim for room rent in the amount of $1,982.50, a decision Goldstein did not appeal. Goldstein has appealed the court’s allowance of Harvard’s Mass. R. Civ. R, Rule 41(b) (2) motion for involuntary dismissal on her counterclaim.
The Dist/Mun. Cts. R. A. D. A., Rule 8C record indicates that in September, 1988, Goldstein matriculated at Harvard’s Graduate School of Arts and Sciences to pursue a doctorate in the Spanish section of the Department of Romance Languages and Literatures (“DRLL”). The parties agree that the “Graduate School of Arts & Sciences Student Handbook” contains the pertinent provisions of the contract between them. The Handbook requires “[c]ontinuous registration, a satisfactory grade record, and evidence that satisfactory progress is being made toward the degree.” “Satisfactory progress” is defined by a number of criteria in the Handbook, including two requirements particularly relevant here. First, “[a] prospective fourth-year student must have passed general examinations or the departmental equivalent.” Second, “[a] prospective fifth-year student must have obtained approval of a dissertation prospectus or its departmental equivalent.” The Handbook further provides that “[a] student who has not met degree requirements or an established deadline may, with department endorsement, be granted an extension for up to one year.”
In October, 1991, at the beginning of her fourth year, Goldstein submitted a dissertation prospectus and took the general examination. A committee of three faculty members selected by Goldstein failed her in the exam and rejected her prospectus.
The DRLL offered Goldstein an opportunity to take the general examination a second time. She failed to retake the examination when it was offered in May, 1992 at the end of her fourth year, or in October, 1992 at the start of her fifth year. Gold-stein was then notified by the faculty that she would be withdrawn from the DRLL if she did not take the exam when it was offered again in May, 1993 at the end of her fifth year. On the day before the examination, however, she notified the faculty *68 that she would not take the exam. She agreed, then refused to take the exam in August, 1993. In September, 1993, Goldstein was refused registration for a sixth year.
During her career at Harvard, Goldstein complained in writing to officials of both the university and the graduate school that various members of the faculty were victimizing her. She testified at trial that these faculty members were motivated by anti-Semitism or were retaliating for her being “vocal.” She alleged in her counterclaim that administrators and faculty members advised her to consider suicide to escape from the Spanish department. Goldstein’s Reply Brief refers to correspondence she received, apparently introduced into evidence but not included in the record appendix, which suggested that various members of the faculty or administration urged her to leave the school because she was emotionally unwell or because other Harvard employees would sabotage her academic career. In particular, Goldstein appears to have testified that a number of faculty members declined to serve on her examination committee for the May, 1993 exam (as was apparently their right), and that the remaining individuals available were, she thought, unfriendly to her. She also testified that immediately before her scheduled May, 1993 examination, Administrative Dean John B. Fox, Jr. recommended that she not take the exam unless she could find a faculty panel satisfactory to her, and stated that he would arrange for her to be admitted to another program. Gold-stein introduced evidence that other students had been granted further extensions to meet program requirements, but there were facts in each case that distinguished those students’ situations from Goldstein’s.
Harvard’s position, to the extent it can be gleaned from the partial record before us, appears to have been that Goldstein’s failure to comply with the program requirements and her response to that failure (emotional appeals to administrators to excuse her) were due to emotional or mental illness rather than a conspiracy of Harvard faculty and administrators. Harvard contended at trial, again as best we can tell from the defective record, that based upon Goldstein’s behavior, Dean Fox thought that she was “unwell” and that she had gone to him at the last minute in an attempt to get out of taking the May examination. Dean Fox concluded from her behavior that she did not want to take the exam. He endeavored to placate her and, although he did not release her from her obligations, indicated that he would try to help her get into another department. Nothing in the record suggests that Gold-stein ever actually applied to another department.
At the close of Goldstein’s evidence on her counterclaim, the trial judge allowed Harvard’s Rule 41(b) (2) motion for involuntary dismissal. Goldstein has appealed that ruling.
1. The record before us is incomplete, containing only portions of the transcript and a few of the many exhibits. Those sections of the transcript that have been included have large blocks of pages out of order. Much of the testimony is not understandable in the absence of the exhibits to which it refers. Depositions, apparently introduced into evidence, were not included in the record. Other portions of the record are incoherent. It is the appellant’s responsibility to have the transcript prepared, and to include in the appendix an accurate and complete trial record upon which the issues presented on appeal may be satisfactorily reviewed. Shawmut Community Bank, N.A. v. Zagami, 411 Mass. 807, 811 (1992); Cameron v. Carelli, 39 Mass. App. Ct. 81, 84 (1995); Sundex, Ltd. v. Antifonario, 1997 Mass. App. Div. 187, 188. Any claims by Goldstein that require consideration of the entire record or missing portions of it must, of necessity, fail.
2. The trial judge allowed Harvard’s Rule 41(b) (2) motion for involuntary dismissal at the close of Goldstein’s evidence on her counterclaim on November 4, 1997. He later supported that decision with four single-spaced pages of detailed findings of fact. It is clear from these findings that the judge did not allow Har- *69 yard’s motion as a ruling of law that Goldstein’s evidence was insufficient to satisfy her burden of proof, see DeVito v. Cellular Mobile Communications, Inc., 1993 Mass. App. Div. 48, 49, but instead allowed it, in his capacity as trier of fact, because he did not accept Goldstein’s evidence. See DeCicco v. D & R General Contracting, Inc., 1997 Mass App. Div. 203; Oyegbola v. DeSimone, 1996 Mass. App. Div. 67, 70-71. Of particular significance were the following findings 11 and 12, which dealt with specific requirements for continuing in the program that Goldstein failed to meet:
11. One requirement for obtaining a doctoral degree from the Department of Romance Languages and Literatures, as contained in the Graduate School of Arts & Sciences Student Handbook, 1988-89, was a passing grade on the Department’s general examination. This requirement is applicable to all students seeking a doctoral degree from the faculty of the Department of Romance Languages and Literatures. No agent or employee, including Margot Gill, Dean for Student Affairs or John Fox, Administrative Dean, of Harvard had authority to change, alter or amend this requirement and they did not purport to do so.
12. Another requirement for obtaining a doctoral degree from the Department of Romance Languages and Literatures, as contained in the Graduate School of Arts & Sciences Student Handbook, 1988-89, was approval of a student’s dissertation prospectus. No agent or employee, including Margot Gill, Dean for Student Affairs or John Fox, Administrative Dean, of Harvard had authority to change, alter or amend this requirement and they did not purport to do so.
The judge also found that Goldstein’s failure to take the examination on the numerous occasions it was offered was “for reasons unknown.”
[I] n passing upon a motion under the second sentence of Rule 41 (b) (2) a trial judge is not limited to that standard of proof required for a directed verdict [citations omitted], rather, the judge is free to weigh the evidence and resolve all questions of credibility, ambiguity and contradiction in reaching a decision.
Ryan, Elliott & Co. v. Leggatt, McCall & Werner, Inc., 8 Mass. App. Ct. 686, 689 (1979); J.W. SMITH & H.B. ZOBEL, RULES PRACTICE §41.10 at 59-60 (1977). Contrary to Goldstein’s assertion, it was not necessary for the judge to make a finding that she was untruthful. An assessment of a witness’s credibility depends on an evaluation not only of the honesty of the witness, but also of the accuracy of the witness’s perceptions and recollections. As Goldstein had the burden of showing that any program requirements were waived or altered, it is sufficient that the trial judge was not persuaded that they were.
3. The specific issue briefed by Goldstein on appeal is whether the trial judge erred in not ruling on Goldstein’s requests for rulings of law. Timely filed requests for rulings of law upon which no action is taken are deemed denied for purposes of appeal. Mass. R. Civ. R, Rule 64A(c). See The Lenco Pro v. Guerin, 1998 Mass. App. Div. 10, 12. As noted, Harvard’s Rule 41(b) (2) motion was allowed at the close of Goldstein’s evidence on her counterclaim on November 4, 1997,[2] The case was continued to November 13, 1997 for final argument on Harvard’s dormitory rent claim, at which time Harvard filed its requests for rulings of law. While Goldstein contends that she also filed her requests on November 13, the trial court docket *70 does not so indicate. Given the state of the appendix, it cannot be determined if Goldstein’s requests were timely filed.
Putting aside the question of the timeliness of the requests,
[i] t is clear from the trial judge’s extensive findings and rulings herein that his ultimate finding for the plaintiff was based on his appropriate assessment as trier of fact of the weight and credibility of the evidence presented, and not on any ruling of law that the evidence was insufficient to permit a finding in the defendant’s favor.
The Massachusetts Company v. Christensen, 1996 Mass. App. Div. 121, 123, citing DiGesse v. Columbia Pontiac Co., 369 Mass. 99, 101 (1975) and Bresnick v. Heath, 292 Mass. 293, 298 (1935). See Canty v. Arbella Mut. Ins. Co., 1998 Mass. App. Div. 32, 34-35. Indeed, while the judge did not rule on Goldstein’s requests, perhaps because of their timing, he made extensive rulings of law in addition to his lengthy findings of fact which demonstrated his application of the legal concepts applicable to the review of academic decisions. Citing Coveney v. President & Trustees of the College of The Holy Cross, 388 Mass. 16, 19 (1983), the trial judge specifically and correctly ruled:
A private university, college, or school may not arbitrarily or capriciously dismiss a student. [Citations omitted] If school officials act in good faith and on reasonable grounds, however, their decision to suspend or expel a student will not be subject to successful challenge in the courts.
The judge’s findings of fact and rulings of law make evident that no legal error was involved in his decision.
Appeal dismissed.
So ordered.

 There are separate counts claiming damages from discharge from a graduate program and loss of wages as a graduate teacher. The latter subject was not briefed and presumably turns on the former.

 The trial judge’s lengthy and detailed written findings of fact and rulings of law on the motion were filed on March 30,1998.