Welsh, J.
This case involves a claim by a student for alleged wrongful dismissal from Bojack Academy of Beauty Culture, a school of cosmetology operated by the defendant. There were counts for breach of contract and for unfair or deceptive *309 acts or practices in contravention of G.L.c. 93A, §9.
The court found for the plaintiff on the contract count and on the 93A count and awarded damages in the amount of $23,862.61-[2] The defendant appeals, claiming to be aggrieved by the court’s action upon various requests for rulings filed by the parties in the case.
The crucial question on this appeal is whether there was sufficient evidence to warrant a finding for the plaintiff and the propriety of the award of damages arrived at by the trial judge.
We conclude that the evidence did not warrant the finding for the plaintiff on either the contract count or the G.L.c. 93A count.
The facts, as gleaned from the judge’s special findings and other evidence in the record, are as follows:
The plaintiff enrolled as a part-time student at Bojack Academy of Beauty Culture (hereinafter, Bojack) from September 9,1996 until- October 30,1997. Her goal was to qualify for employment in cosmetology. In order to pay the tuition required, the plaintiff obtained a student loan, the proceeds of which were paid to Bojack. The plaintiffs anticipated date of completion of the course of study was May 27, 1998. Plaintiff became dissatisfied with Bojack soon after embarking on the course of study and training. She generated a record of tardiness and absences that was abysmal. She was placed on academic probation because of her poor attendance record. She managed to improve her attendance record and her tardiness diminished when the school changed her hours of attendance and instruction to make it more convenient for her. Her dissatisfaction with the school did not abate. She complained of a high turnover rate in instructors, a lack of continuity in the courses and other inefficiencies such as the loss of tests plaintiff had taken compelling her to retake the tests. Plaintiffs disenchantment continued to fester until October 29,1997 when this unhappy tale reached its denouement. When the plaintiff arrived, she discovered that the regularly assigned instructor was absent and a new and inexperienced substitute presided both over a class of neophytes and the absent teacher’s class. The new teacher then informed the plaintiff that she would be given two tests that she needed to have. The plaintiff objected because she had already taken the same tests twice because they had been lost the first time. When confronted with the prospect of yet another re-take, the plaintiff became agitated. Plaintiff was told to calm down and to work on her mannequin. Although she acceded to this request, she remained upset. When a client presented herself for some service, the plaintiff was told that she might work on the client and thereby gain practical experience. The plaintiff, who continued to be upset and declined the invitation, told the teacher that she did not feel up to it. The teacher told the plaintiff to pack her things and leave for the day. The plaintiffs level of speech became strident, telling the teacher not to treat her as a child. The teacher, being upset herself that her authority was being challenged in the presence of other students, submitted a report of the incident to the school authorities, recommending that the plaintiff be suspended. The response of the authorities was the dismissal of the plaintiff. No hearing was sought by the plaintiff and none was offered her by the school. The plaintiff had been anything but reticent in her criticism of the school. She states in a written critique several days earlier that the administrator ought to show more respect, professionalism and friendliness toward the students. The trial judge inferred, not without reason, that such expressions did little to endear the plaintiff to school officialdom.
The pertinent language in the agreement between the school and the plaintiff is *310 as follows: “The school reserves the right to terminate any student due to disciplinary problems, attendance, and/or academic levels below standards, failure to comply with school rules and regulations, submitting falsified documents, misappropriating supplies, equipment, or items not belonging to him/herself, possessing and/or being under the influence of drugs or alcohol, or any cause the school deems necessary for the good of the school and/or the school body. Alcoholic beverages and nonprescription drugs are not permitted on the premises.”
The reasons cited for plaintiffs termination were “disciplinary problems and non-compliance with school rules and regulations,” without further elaboration.
Reasoning that the attendance and tardiness issues had been resolved before the October 29, 1997 incident which precipitated plaintiffs dismissal, the judge concluded that the confrontation between the plaintiff and the teacher was not a violation of any school regulation and did not constitute a disciplinary problem. The judge opined that the penalty of dismissal was wholly disproportionate to the incident. While conceding that the plaintiff might not be the easiest person to get along with, the insecurity of a novice teacher magnified the incident. Finally, the judge concluded that ‘The arbitrary and arrogant decision of the administration to dismiss plaintiff without any hearing or statement of reasons was improper.”
1. In the absence of an agreement on the part of a private educational institution to afford a hearing on matters pertaining to discipline or dismissal, the school was not under a duty to provide such a hearing. Courts are generally reluctant about second-guessing academic and disciplinary decisions made by private schools. This deference derives from a commendable respect for the independence of private educational institutions and a well-justified laissez-faire attitude toward the internal affairs of such institutions. Schaer v. Brandeis University, 48 Mass. App. Ct. 23, 26 (1999). This attitude of deference is neither absolute nor universal. A dismissal of a student cannot be effected arbitrarily or capriciously. There is no inherent requirement for a due process sort of hearing. Coveney v. President and Trustees of the College of the Holy Cross, 388 Mass. 16, 21-22 (1983). Of course, where a private educational institution makes provision for a hearing in such matters, it is bound to provide such a hearing. Schaer v. Brandeis, supra at 28. There was no sort of hearing promised in the catalogue of Bojack and none may be inferred in this case.
2. There is insufficient evidence to support the judge’s implicit finding that the school acted arbitrarily or capriciously in dismissing the plaintiff. The school’s decision to dismiss the plaintiff is neither arbitrary nor capricious so long as the school acts in good faith and on reasonable grounds. Coveney v. President and Trustees of the College of the Holy Cross, supra at 19; Hood v. Tabor Academy, 296 Mass. 509, 510 (1937). The judge’s conclusion that the school was required to specify a particular rule or regulation to justify dismissal is error. In Harvard University v. Goldstein, 1999 Mass. App. Div. 67, a dismissal for failure to make “satisfactory progress” toward a doctorate degree was deemed a sufficiently specific basis for termination of the student’s relationship with the school.
It is ordered that the findings for the plaintiff on the breach of contract and on the G.L.c. 93A counts be vacated and that judgment be entered dismissing those counts on the merits.
So ordered.

 The court found actual damages in the sum of $6,243.20, which were doubled based upon the court’s implicit finding of a knowing and intentional violation of c. 93A, plus interest and costs, plus $10,000 awarded as an attorney fee.