Merrick, J.
Plaintiff Carol Furtado (“Furtado”) commenced this motor vehicle tort action against defendant Allen Levrault (“Levrault”) to recover damages for personal injuries allegedly suffered in a collision between the two vehicles they were operating. Following a jury verdict for Levrault, Furtado filed this appeal. Furtado alleges as error: (1) the trial judge’s admission into evidence of opinion testimony from Levrault’s expert on the subject of Levrault’s speed at the time of collision, and (2) the judge’s instruction to the jury on the subject of speeding.
The accident occurred just before 1:00 AM. on Maple Avenue in Swansea. Furtado was driving a Chrysler Sebring in the southbound lane while Levrault was driving a Lexus in the northbound lane. The area of the accident was poorly lit. It had been raining heavily since the previous day, although Levrault said it was not actually raining at the time of the accident, while Furtado and a police officer said it was raining at that time. Near the accident scene, there was a portion of the northbound lane that tended to flood or pond in very rainy weather due to a storm drain that would apparently get clogged. The officer said the flooding condition was perhaps 6 feet into the lane, about 75 feet long, and with a depth of “approximately a couple inches, two, maybe three inches.” Levrault testified that the flooding condition went 10 feet into his lane and was 12 or 13 feet long. As he came to the water, Levrault hit his brakes and his vehicle hydroplaned. He did not have control of his vehicle as it crossed into the southbound lane and hit Furtado’s vehicle approximately head on.
1. Furtado has appealed the judge’s ruling permitting Levrault’s expert to testify to the combined speed of the vehicles at the moment of collision, arguing that the expert did not follow the methodology set forth in a textbook upon which he relied.
Levrault’s expert witness was Charles J. Costello (“Costello”), a civil engineer and safety consultant. Athough his training, experience, and teaching at Wentworth Institute seemed to involve road construction and structural failure, Costello attended training in accident reconstruction, and had previously qualified and been permitted to testily in courts about accident reconstruction. Costello testified that he performed “crush analysis” on the parties’ vehicles by determining the depth of the “crush” damage from the vehicle collision to calculate the force of the collision and thereby the combined speed of the vehicles. He testified that although the vehicles were no longer available for inspection when he was retained, there were good pho *156 tographs of the damage. He further testified that he could measure the crush by taking a measurement of a known vehicle component on the vehicles, a 16-inch diameter wheel on both, and using it as a scale to estimate the depth of the crush on each vehicle in the photographs, which he determined to be 14.1 inches on Levrault’s vehicle and 12 inches on Furtado’s vehicle.
At that point, Costello offered an opinion on the combined speed of the vehicles, which the court declined to admit because of a lack of foundation as to methodology. Costello then went on to testify that he made his calculation using “crush analysis” based upon a graph in “Accident Reconstruction” by Lynn Fricke, which he said was one of a number of standard texts upon which he relied. To the graph in “Accident Reconstruction,” Costello applied the “modulus of elasticity of steel.” He said he made that calculation after determining, from examining similar vehicles and obtaining materials from both manufacturers, that the material to be used in the crush analysis for both vehicles was steel. “Accident Reconstruction” lists nine separate categories of vehicle with different figures to be applied to the formula exemplified by the graph. Because the vehicles in this case were not included in those tested for inclusion in the Fricke categories, Costello did not follow the Fricke formula entirely, but departed from it to use a general figure for steel for both cars. He testified that his method was scientifically reliable. After hearing all of the foregoing, the trial judge reversed his decision and permitted Costello to testify to his opinion on both the combined speed of the vehicles and the speed of each at the moment of collision. Costello estimated the combined speed at 45-50 miles per hour and “in the vicinity” of 25 miles per hour for each vehicle.
Assessment of the reliability of an expert’s methodology and the admission or exclusion of expert testimony is “largely within the discretion of the trial judge and will be reversed only where it constitutes an abuse of discretion or error of law.” Adoption of Hugo, 428 Mass. 219, 232 (1998). It was within the judge’s discretion to admit or exclude the expert opinion, and we do not substitute our discretion for his. In her appellate brief, Furtado makes a number of arguments based upon purported statements from “Accident Reconstruction” that were not introduced into evidence before the judge or jury. Although the book was used in cross-examination, the judge was never asked to rule on it as a learned treatise. Even if the book were to be regarded as a learned treatise under Mass. G. Evid. 803 (18) (2010), statements therein would not be in evidence unless they were called to the attention of the expert on cross-examination, or read into evidence. Federico v. Ford Motor Co., 67 Mass. App. Ct. 454, 458-459 (2006). It avails Furtado nothing if statements in the book that were not put into evidence improve her arguments on the admissibility or weight of the opinion. Our ruling is based upon the evidence called to the attention of the judge during the trial.
In any event, it is difficult to see how the opinion on impact speed was harmful to Furtado. The impact speed was relevant to the subject of Levrault’s preaccident speed, but there was never any additional evidence correlating the impact speed with Levrault’s pre-emergency speed. It cannot be said even that Costello’s opinion contradicts the evidence from Furtado’s accident reconstruction expert witness, a retired state police officer, who testified that Levrault’s vehicle would have hydroplaned only at 56 to 59 miles per hour. Levrault himself testified that he was traveling 30 or 35 miles per hour before the accident. Costello testified, without *157 objection, that Furtado stated in her deposition that Levrault was approaching at 35 to 40 miles per hour.[1]
2. In her requests for jury instructions, Furtado requested a specific instruction in the language of a relevant safety regulation, G.L.c. 90, §17.
No person operating a motor vehicle on any way shall run it at a rate of speed greater than is reasonable and proper, having regard to traffic and the use of the way and the safety of the public.... If a speed limit has been duly established upon any way, in accordance with the provisions of said section, operation of a motor vehicle at a rate of speed in excess of such limit shall be prima facie evidence that such speed is greater than is reasonable and proper; but, notwithstanding such establishment of a speed limit, every person operating a motor vehicle shall decrease the speed of the same when a special hazard exists with respect to pedestrians or other traffic, or by reason of weather or highway conditions.
In his charge, the judge instructed the jury in the usual manner about the duty of reasonable care, including taking account of road conditions, lighting, speed, and other safety regulations. He repeatedly told them they should consider “all the surrounding circumstances” of the accident. The judge did not, however, give the specific instruction requested, nor did he mention the word “weather.” We assume without deciding, for the sake of discussion,[2] that Furtado repeated her request after the instructions were given to the jury and the judge declined to instruct further.
We think it would have been preferable for the judge to have charged the jury in *158 the language of the statute, specifically including “weather or highway conditions” as Furtado requested. However, “[a] judge is under no obligation to charge the jury in the specific language requested by a party, so long as the charge is complete and correct in its essentials.” Drivas v. Barnett, 24 Mass. App. Ct. 750, 754 (1987), citing Van Dyke v. Bixby, 388 Mass. 663, 670 (1983). The charge is not a model of clarity, but there can be no suggestion in this case that the jury was unaware that “weather and highway conditions” were among “all the surrounding circumstances” the judge told them to consider in determining whether Levrault breached his duty of care.
Judgment affirmed.
So ordered.

 Furtado did not testify to this effect at trial, although she did not testify to anything contrary to it. The jury noticed the deposition reference, as they put the following question to the judge during deliberations: “Did the plaintiff state in her testimony that the defendant was traveling 35 miles per hour?” “Statements of a party-opponent need not be made on personal knowledge to be admissible. Nor are such statements subject to the opinion rule.” M.S. BRODIN & M. AVERY, MASSACHUSETTS EVIDENCE §8.6.1, at 503 (8th ed. 2007). See LaPlantev. Maguire, 325 Mass. 96,98 (1949) (plaintiffs statement that defendants “not going too fasti’ admissible as admission); Nicholas v. Lewis Furniture Co., 292 Mass. 500, 503 (1935). As to lay wit ness opinion on speed in miles per hour, see M.S. BRODIN & M. AVERY, supra at §7.2.2, at 398, Commonwealth v. Giontzis, 47 Mass. App. Ct. 450, 461 (1999), and Commonwealth v. Charland, 338 Mass. 742, 744 (1959).

 The transcript merely states, “(Side bar conference).” It may be that stenographers who prepare district court trial transcripts for appeal are ordinarily occupied in the transcription of depositions where counsel frequently go “off the record” and the ensuing discussion is not included in the transcript. It should be unnecessary to state that a sidebar conference is not only not “off the record,” but very often, as in this case, includes the record of the ruling being appealed. “It is the appellant’s responsibility to have the transcript prepared, and to include in the appendix an accurate and complete trial record....” Harvard Univ. v. Goldstein, 1999 Mass. App. Div. 67, 68 and cases cited.