Merrick, J.
Defendant Coldwell Banker Residential Brokerage (“Coldwell Banker”) has appealed a judgment against it based upon a misrepresentation made in the “Seller’s Statement of Property Condition” (“Seller’s Statement”) by a broker it employed who was also the owner-seller.
In 2003, through Coldwell Banker, plaintiffs James H. and Denise M. Wilson (“Wilsons”) purchased a home at 297 York Street in Stoughton from the previous owners, defendants Robert J. Thornton and Renda I. Thornton (“Thornton”). Renda Thornton was a real estate broker employed by Coldwell Banker, and was obligated by the terms of her employment contract to use Coldwell Banker in the event she wished to sell her home. When that occurred, Renda Thornton was designated as the “listing broker,” that is, the person who brings in the property for sale and obtains a percentage of any commission. Another Coldwell Banker broker, Susan Saunders (“Saunders”), actually sold the property and was thereby the “selling broker.” This appeal turns largely on the issue of whether, and under what circumstances, Coldwell Banker is liable for misrepresentations made by Renda Thornton in the Seller’s Statement, which she completed in her capacity as owner.
In the summer of 2003, the well supplying water to 297 York Street and its swimming pool failed. After an investigation, the Wilsons sent demands for relief under G.L.c. 93Ato Renda Thornton and Coldwell Banker, and brought this action against both Thorntons and Coldwell Banker. The Wilsons’ complaint included counts against all three defendants for deceit and negligent misrepresentation, and against Renda Thornton and Coldwell Banker for violations of c. 93A All complaint counts were based on responses Renda Thornton made in the Seller’s Statement.
The jury later found that Renda Thornton’s responses not only constituted both deceit and misrepresentation, but also caused the damages suffered by the Wilsons. Following the jury’s verdict on special questions and a hearing by the judge on the *234 c. 93A claims, judgments were entered in favor of the Wilsons against the Thorntons and Coldwell Banker. A Mass. R. Civ. E, Rule 59(e) motion by Coldwell Banker to amend the judgment was denied. Coldwell Banker has appealed that motion ruling and the judgment against it.[3]
1. The trial judge instructed the jury on the subject of deceit and negligent misrepresentation against the defendants and, after a sidebar conference at the end of the charge,[4] added instructions on vicarious liability, which were, in their entirety:
It was brought to my attention, something I think I should — I should give you by way of instruction.
And this is in regards to Coldwell Banker, who is also a defendant in this case. The plaintiffs claim that Coldwell Banker is vicariously liable for the actions of Renda Thornton.
In order for Coldwell Banker to be liable for Ms. Thornton’s actions, the plaintiff must prove that Coldwell Banker had control over Ms. Thornton and that the complained of actions were performed within the scope of her employment with Coldwell Banker.
There is a great deal more that could and should have been said to the jury on the subject of the vicarious liability of a principal for the knowledge and actions of an agent who is secretly acting adversely to the interests of the principal, or entirely or in part in her own interest. We deal with this subject in section 3 of this opinion. As to the jury charge and verdicts, it will suffice to note that neither party requested jury instructions on that subject, nor did either object to the absence of such instructions in the jury charge.
The case was submitted to the jury on 17 questions. They included two questions as to whether Renda Thornton engaged in, respectively, deceit and negligent misrepresentation “in her capacity as seller of the property.” To both those questions, the jury answered “Yes,” and assessed damages at $32,732.00. The jury also answered two similar question as to whether Renda Thornton engaged in, respectively, deceit and negligent misrepresentation “in her capacity as listing agent” The jury’s answer to both was “No.” As to Coldwell Banker, the jury answered “No” to the question of whether it had engaged in deceit, but “Yes” to the question of whether it had engaged in negligent misrepresentation. However, the jury then answered “No” to the next question, ‘Was Coldwell Banker Residential Brokerage’s negligent misrepresentation a substantial contributory cause of the plaintiffs’ claimed damages?”
On the verdicts, the clerk issued a judgment for the Wilsons on all counts (except the c. 93A counts) joint and several against the Thorntons and Coldwell Banker in the amount of $32,732.00. There is no basis in the jury verdict, however, for a judgment against Coldwell Banker. The Wilsons make no intelligible argument to the *235 contrary in their brief, and their counsel conceded as much at oral argument. It is not clear how the judgment against Coldwell Banker came to be issued. There is no order for the judgment from a judge. It was error, therefore, for the judge to deny the motion to amend the judgment.
The judgments against Coldwell Banker are to be vacated. On count 4, the deceit count against Coldwell Banker, the judgment is reversed and judgment shall be entered for Coldwell Banker. The negligent misrepresentation alleged in count 5 against Coldwell Banker is the same alleged in the negligent misrepresentation count against the Thorntons and found to have caused damages, so it would appear to have been inconsistent to find that the negligent misrepresentation did not cause damages in the same claim against Caldwell Banker. For that reason and other reasons we discuss in section 3 of this opinion, we order a new trial on count 4.
2. The trial judge decided the Wilsons’ claims under c. 93A against Renda Thornton and Coldwell Banker. In so doing, he was not constrained by the jury’s verdict on any questions. Altschuler v. Lamond, 2006 Mass. App. Div. 141, 142, citing Wyler v. Bonnell Motors, Inc., 35 Mass. App. Ct. 563, 567 (1993). Indeed, his findings could have been directly contrary to those of the jury on the same issue. Chamberlayne Sch. & Chamberlayne Jr. College v. Banker, 30 Mass. App. Ct. 346, 354-355 (1991). The judge made his own c. 93A findings in this case, although he “agreed” with the jury that there was a misrepresentation made by the Thorntons. He properly found for Renda Thornton, concluding that she was not acting in her trade or business in the sale of her own home. See Lantner v. Carson, 374 Mass. 606, 608 (1978).
He also found against Coldwell Banker on the basis of the breach by Saunders, the selling broker, of “her duty and responsibility to determine the accuracy of the documents given to the Wilsons regarding the condition of the property and her failure to investigate or at least inquire of the Thorntons as to the accuracy of the answers given on the condition of property form.” That finding includes two legal errors. First, the judge’s finding was based not on any evidence, but upon his drawing of a negative inference from the fact that Saunders was not called to testify That inference was improper. There was no foundation laid to establish her availability. See Grady v. Collins Transp. Co., 341 Mass. 502, 504 (1960); Commonwealth v. Calcagno, 31 Mass. App. Ct. 25, 29 (1991); M.S. BRODIN & M. AVERY, MASSACHUSETTS EVIDENCE §3.6.2, at 99 (8th ed. 2007); R.W. BISHOP, PRIMA FACIE CASE §53.11, 46-47 (5th ed. 2005). The judge drew the inference without raising the issue of such an inference before counsel. Had he done so, he would have learned that defense counsel had notified plaintiffs’ counsel before trial that Saunders’ minor child was undergoing surgery at the time.
Second, the broker, Saunders, did not have a duty to determine the accuracy of statements made by the seller, or to investigate them in the absence of her own knowledge, or at least her own reason to know of the falsity of the statements. Underwood v. Risman, 414 Mass. 96, 99-101 (1993). Quinlan v. Clasby, 71 Mass. App. Ct. 97, 102-104 (2008).
In any event, Saunders’ actions or inaction could not have been the basis of any c. 93A claim because neither any action by her, nor any failure on her part, was asserted in the statutory demand letter. Pella Windows, Inc. v. Burman, 2009 Mass. App. Div. 106, 107-108. The c. 93A judgment against Coldwell Banker, based as it is upon the conduct of Saunders, cannot stand.
*236 3. The judgment being vacated, the next question is whether judgment should be entered for Coldwell Banker, or a new trial should be ordered. Despite the judge’s findings, the Wilsons’ claim against Coldwell Banker was never based on Saunders’ actions, but was advanced instead upon the theory that Renda Thornton’s knowledge of the falsity, or at least misleading incompleteness, of her statements was chargeable to Coldwell Banker. The judge’s finding that Renda Thornton is not herself directly liable under c. 93A because she was selling her own house does not resolve the question of Coldwell Banker’s liability under that statute, arising from the fact that Renda was a Coldwell Banker broker, required by Coldwell Banker to list the properly with it for sale and to assume the status of listing broker.
Generally, “[a] principal is liable for the fraud committed by his agent or servant acting within the scope of his employment.” McCarthy v. Brockton Nat'l Bank, 314 Mass. 318, 325 (1943). But where an agent is engaged in an independent fraudulent act, his knowledge is not imputable. Tremont Trust Co. v. Noyes, 246 Mass. 197, 207 (1923). However, the principal cannot claim the advantages of the bad acts of its agent without assuming the imputation of their knowledge. Id
On the subject of the imputation of knowledge to a principal where the agent is acting adversely to the principal, RESTATEMENT (SECOND) OF AGENCY §282 (1958) provides:
(1) A principal is not affected by the knowledge of an agent in a transaction in which the agent secretly is acting adversely to the principal and entirely for his own or another’s purposes, except as stated in Subsection (2).
(2) The principal is affected by the knowledge of an agent who acts adversely to the principal:
(a) if the failure of the agent to act upon or to reveal the information results in a violation of a contractual or relational duty of the principal to a person harmed thereby;
(b) if the agent enters into negotiations within the scope of his powers and the person with whom he deals reasonably believes him to be authorized to conduct the transaction; or
(c) if, before he has changed his position, the principal knowingly retains a benefit through the act of the agent which otherwise he would not have received.
Id. §282, at 611-612. The “adverse interest” exception states that “[a] principal is not affected by the knowledge of an agent in a transaction in which the agent secretly is acting adversely to the principal and entirely for his own or another’s purposes” (emphasis added). Sunrise Props., Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C., 425 Mass. 63, 67 (1997), quoting RESTATEMENT (SECOND) OF AGENCY, supra §282, at 611. But under Massachusetts law, where an agent of the corporation “was acting within the scope of his employment when he learned of circumstances that might give rise to a claim against both him and [the corporation],” id., his knowledge is imputed to the corporation “under ordinary agency principles.” Id Finally, in his treatise on agency law, Professor Seavey also provides the following useful guidance:
*237 A principal is liable for many frauds by the agent, although committed for the agent’s own purposes. In fact, most unauthorized frauds by agents are committed because of the strong conflicting interests of the agent. In such cases, the innocent principal is liable because the agent has knowledge which makes his representations deceitful. The fact that the agent has every reason to conceal the facts from the principal is immaterial....
W.A. SEAVEY, AGENCY §102, at 185-186 (1964).
Although the Wilsons did not preserve in the claims tried to a jury their rights on the issue of a principal’s responsibility for a dishonest agent’s knowledge, they did so in their c. 93A case by submitting requests for rulings of law in accordance with Mass. R. Civ. R, Rule 52(c). These requests included the following request no. 12:
A corporation may be held vicariously liable under G.L. c. 93A for the conduct of an agent within the scope of employment “if it is the kind he is employed to perform; if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part by a purpose to serve the employer.” Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass. App. Ct. 86, 96, 711 N.E.2d 911, 920 (1999); Grand Pacific Financial Corp. v. Brauer, 57 Mass. App. Ct. 407, 420 (2003).
This is a correct proposition of law, relevant to the central issue in the claim against Coldwell Banker under c. 93A. While the trial court “Allowed” request no. 12, it made no findings on the issue, perhaps because it decided the case against Coldwell Banker on other grounds. The evidence would have supported a finding for either party on the issue, considering such things as Coldwell Banker’s insistence on the relationship in the transaction and the compensation, or any other benefit derived by the parties, particularly Coldwell Banker, from this and similar transactions with employees. In the absence of such findings, there must be a new trial on count 6 of the complaint, the c. 93A claim against Coldwell Banker.[5]
Although the jury found damages of $32,732.00 flowing from the misrepresentation, the judge found the single damages from the same conduct, but under c. 93A to be $17,000.00, which he doubled to $34,000.00. While the judge was entitled, as we have noted above, to reach a different result on the same issue on the same evidence as the jury heard, he utterly failed in his ten-page memorandum of decision to give any idea how he arrived at that figure, much less whether it was cumulative or included in the other damages award. Because of this confusion on damages, as well as the inconsistent jury answers on the jury verdict discussed above, we also order a new trial on count 5, the negligent misrepresentation claim against Coldwell Banker.
The judgments against Coldwell Banker are vacated. The judgment on count 4 is reversed, and judgment shall be entered for Coldwell Banker. The claims against Coldwell Banker on counts 5 and 6 are returned for a new trial.
So ordered.

 The record reflects a notice of appeal by Robert Thornton, but that appeal appears not to have been perfected.

 The entire entry in the transcript for the sidebar conference conducted at the end of the charge is: “(Off the record),” and would have been insufficient to preserve any issue. See Furtado v. Levrault, 2010 Mass. App. Div. 155, 157 n.2.

 For purposes of scheduling the new trial, we note that it "will not be necessary for the case to be heard by the same judge.