Houston, J.
This case arises out of the suspension of plaintiff Drew A. Morris (“Morris”), a student at defendant Brandéis University (“Brandéis”) after Brandeis’s Board of Student Conduct unanimously found that Morris plagiarized his final term paper. Following his suspension, Morris filed a four-count complaint against Brandéis alleging: breach of contract and covenant of fair dealing (Count I); breach of the implied covenant of good faith and fair dealing (Count II); negligent misrepresentation (Count III); and breach of fiduciary duty (Count IV). Brandies now moves for summary judgment on each of the four counts pursuant to Mass.R.Civ.P. 56(c). After a hearing and a thorough review of the record, the Court finds that summary judgment shall be ALLOWED.
BACKGROUND
The evidence offered in connection with the present motion is voluminous. The Court has reviewed all of it, as well as the characterizations of it provided in the memoranda of counsel and statements pursuant to Superior Court Rule 9A(b)(5). Only those portions of the evidence that bear on this motion will be set forth. Where testimony conflicts, the version presented is that most favorable to plaintiff as the party opposing the motion.
In early 1997, Morris, a second-semester senior at Brandéis, took an elective course, Facism East and West, taught by Professor Alice Kelikian (“Dr. Kelikian”). On May 12, 1997, after Morris turned in his final paper, Dr. Kelikian submitted to the Office of Campus Life a Student Judicial System Referral Report (“referral report”) stating that Morris “plagiarized verbatim from four secondary sources without proper citation.” Complaint ¶ 14-15. The referral report stated that Morris may have violated Sections 5.1 and 5.4 of Rights and Responsibilities in the Brandéis student handbook (“Handbook”).
The Handbook provides Brandeis’s Community Standards of Behavior, University Policies and Student Judicial System procedures. Section 5 of the Handbook contains Brandeis’s policies on academic honesty, and states, in part, that “(e]veiy member of the University community is expected to maintain the highest standards of academic honesty.” Section 5.1 further provides that
[a] student’s name on any written exercise . . . [or] report. . . constitutes a statement that the work is the result of the student’s own thought and study, stated in the student’s own words, and produced without the assistance of others except as quotation marks, references, and footnotes acknowledge the use of other sources . . .
Section 5.4 provides that “[a] student’s lack of understanding of academic dishonesty regarding plagiarism ... is not a valid defense to the charge of academic dishonesty.”
On May 12, 1997, Lori Tenser, the Associate Director for Campus Life (“Tenser”), met with Morris and told him that there was sufficient evidence of academic dishonesty to submit the matter to the Brandéis Student Judicial System. After the meeting, Tenser wrote *628 Morris a letter advising him of the referral report, stating that Morris had been accused of academic dishonesty stemming from his final paper for Dr. Kelikian in which he failed to provide proper citation and cites, and quoting from the sections of the Handbook which Morris was accused of violating. The letter also advised Morris that he had seventy-two hours to decide whether to accept responsibility for plagiarism or to deny responsibility and have a hearing before the Board of Student Council (“Board”). Tenser also included a copy of the Handbook with her letter to Morris.
On May 13, 1997, Morris again met with Tenser, pleading his innocence. Thus, pursuant to the Handbook procedures the matter was submitted to the Board.[1] Morris claims that in his meetings with Tenser, she stated and reiterated that he was entitled to have an advisor with him at the hearing solely for moral support, because the advisor could not speak at the hearing.
Morris subsequently contacted two professors, Professor Polonsky and Professor Jankowski, and asked them each to serve as his advisor.[2] Morris also asked a Brandéis graduate student to write a letter on his behalf. All three individuals declined to assist Morris.
On May 16, 1997, the Board, which was comprised of three faculty members, three students and a student chairperson, held a hearing to address Dr. Kelikian’s referral report. Morris had no advisor to accompany him into the hearing. Dr. Kelikian and Morris made their respective statements to the Board. Dr. Kelikian also presented Morris’s final paper, which she had highlighted and tabbed indicating the plagiarized sections. After hearing both sides, the Board determined, by an unanimous vote, that Morris was accountable for violating the Handbook’s honesty provisions. The Board recommended that Morris be given a failing grade for the course, be suspended through December 31, 1997 and that the History Department reconsider Morris’s honors eligibility.
On May 19, 1997, Tenser wrote to Morris outlining the Board’s findings and sanctions, advising Morris of his right to appeal the Board’s determination and setting out possible appeals procedures. On May 22, 1997, Morris appealed the Board’s decision to the University Appeals Board.
On May 19, 1997, as a result of the Board’s determination, Morris was administratively withdrawn from Brandéis and removed from the 1997 degree list. On May 30,1997, the University Appeals Board denied Morris’s appeal and sanctions were put into effect.
On February 20, 1998, after receiving a letter Morris wrote asking to be readmitted to the university, Brandéis authorized Morris’s return and inclusion on the May 1998 degree list. In May 1998, Morris graduated with his B.A. degree from Brandéis.[3]
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and showing that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time Inc., 404 Mass. 14, 16-17 (1989). Where the moving party makes an initial showing that there exists no genuine issue of material fact, the non-moving party may not merely rely upon bald allegations to avoid summary judgment. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711-16 (1991); LaLonde v. Eissner, 405 Mass. 207, 209 (1989). That is, Morris must set forth specific facts showing that there is a genuine issue for trial and cannot rest merely upon conclusory allegations, improbable inferences and unsupported speculation. Goldman v. First Nat’l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993), see also Malapanis v. Shirazi, 21 Mass.App.Ct. 378, 385 n.7 (1986) (party must set forth such facts as would be admissible in evidence).
I. Breach of Contract (Count I)
In Morris’s breach of contract claim, Morris alleges that Brandéis was contractually obligated to conduct its disciplinary proceedings in a fair, objective and impartial manner and breached its obligation by: (1) denying him the right to an advisor as provided for in Section 20.8 of the Handbook; and (2) engaging in arbitrary, capricious and fundamentally unfair conduct. Brandéis takes the position that its Handbook does not create contractual obligations between the university and students, however, even if it did, Brandéis did not breach it obligations.[4]
This Court employs “the standard of ‘reasonable expectation — what meaning the party making the manifestation, the university, should reasonably expect the other party to give it.’ ” Schaer v. Brandeis Univ., 432 Mass. 474, 478 (2000), citing Cloud v. Trustees of Boston Univ., 720 F.2d 721, 724 (1st Cir. 1983) (citations omitted). This Court must therefore examine the summary judgment record to determine whether Morris has asserted facts, which, if true, create a genuine issue of material fact that Brandéis breached this contract; i.e., that Brandies failed to meet those expectations which it should reasonably expect students such as Morris to have under the Handbook. See Lyons v. Salve Regina College, 565 F.2d 200, 202 (1st Cir. 1977), cert den., 435 U.S. 971 (1978).
Morris contends that Brandéis violated Section 20.8 of the contract by depriving him of the assistance of an advisor at his hearing before the Board. Brandéis asserts that although Morris had the right to bring an *629 advisor, Brandéis was under no obligation to provide him with one. Morris was. therefore, free to seek the assistance of others in the Brandéis community for the hearing.
Section 20.8 of the Handbook provides,
[t]he accused student and the accuser shall each have the right to bring an advisor of his/her choice from the University community to assist in presenting the case before the board or for advice during the hearing.
There is no dispute that there is no provision in the Handbook which requires a professor or other member of the Brandéis community to serve as an advisor.
As to Morris’s allegations, on the record before this Court, Morris’s claim that Brandéis undertook steps to deny Morris the assistance of an advisor from the Brandéis community is unsupported and littered with inadmissible evidence. The factual foundation of Morris’s claim rests on the sole contention that he asked three individuals — two professors and one graduate student — to serve as his advisor, and they declined.[5] This Court notes that these contentions are found in Morris’s own affidavit which contains multiple instances of hearsay and self-serving statements of events. This support, standing alone, is unacceptable to defeat summary judgment. See Madsen v. Irwin, 395 Mass. 715, 721 (1985) (“hearsay in an affidavit is unacceptable to defeat summary judgment”). Morris’s affidavit also contains conclusory statements, offered without any evidentiary foundation or factual underpinning and shall similarly be disregarded for purposes for defeating this motion. See Id. (“conclusory statements, general denials and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment”). Morris has therefore set forth no facts supporting his contentions. In the absence of such facts, this Court concludes that Morris has not demonstrated that a genuine issue of material fact exists defeating summary judgment.
Morris also alleges that Brandéis breached its contract because the sanction he received from the Board was too harsh and, therefore, not “fundamentally fair.” Courts are generally reluctant about second-guessing academic and disciplinary decisions made by private schools. This deference derives from a commendable respect for the independence of private educational institutions and a well-justified laissez-faire attitude toward the internal affairs of such institutions. See Schaer, 432 Mass. at 482. Thus, if school officials act in good faith and on reasonable grounds their decision to suspend or expel a student will not be subject to successful challenge in the courts. See Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 19 (1983).
In this case, there is ample evidence in the record to support the Board’s unanimous finding. At the hearing Dr. Kelikian provided the Board with a color-coded copy of Morris’s paper, demonstrating numerous instances where Morris used language verbatim from other sources, used no quotation marks and in some instances changed only one or two words. The Board was also informed about Brandeis’s substantial effort to educate its students about academic honesty. In addition, Dean Crafts, who was responsible for reviewing the punishment, found that the sanction imposed by the Board was “consistent with those for other upperclass students under similar circumstances.” Further, after the Board’s decision, Brandéis clearly articulated to Morris that it was suspending him because of his breach of the Brandéis Rights and Responsibilities found in its Handbook that each Brandéis student receives.
It is also undisputed that the Handbook provided for each procedural step undertaken by Brandéis, including: Dr. Kelikian submitted a referral report; Brandéis gave Morris notice; Brandéis provided Morris the Handbook; Morris chose his own course of action; a hearing was held before a properly composed Board; the Board heard testimony from both sides; the Board found Morris accountable and imposed penalties; the Dean of Students reviewed Morris’s penalty; and Morris appealed to the appeals board who reviewed the sanctions and denied his appeal. Morris also received additional processes not set forth in the Handbook, including meetings with Tenser and Dean Crafts.
Morris counters Brandeis’s characterization of the disciplinary process by alleging that Brandéis presented inflammatory and incomplete evidence and actively interfered with his ability to obtain an advisor. Again, beyond his bare allegations, Morris has produced no admissible evidence which supports these allegations. “It is only when . . . conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that ‘conclusions’ become ‘facts’ for pleading purposes.” Schaer, 432 Mass, at 478. In the absence of such evidence, Morris’s allegations do not create a genuine dispute that Brandeis’s breached its contract by conducting a hearing process that was fundamentally fair.
II. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)
In Count II, Morris alleges that Brandéis breached the implied covenant of good faith and fair dealing implicitly found in the Handbook. Morris, however, does not allege any additional facts in support of his claim. The implied covenant of good faith and fair dealing provides “that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Anthony’s Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 471-72 (1991) (citations omitted). Thus, to the extent the Handbook creates contractual obligations, an implied covenant may exist. The implied covenant, however, may not override the express *630 terms of the Handbook. See Dunkin’ Donuts Inc. v. Panagakos, 5 F.Sup.2d 57, 64 (D.Mass. 1998) (where express terms permit defendant’s conduct, plaintiff cannot rely on implied covenant for remedy). Thus, similar to Count I, Morris has not produced any admissible evidence to counter the record which sufficiently demonstrates that Brandéis conducted the entire disciplinary and appeals process with fundamental fairness.
III. Negligent Misrepresentation (Count III)
In Count III, Morris alleges that Brandéis represented itself as a fair institution and then treated Morris unfairly by acting arbitrarily by failing to follow its guidelines. Morris also alleges that Tenser mischaracterized and diminished the role an “advisor” plays at his disciplinary hearing.
In order to succeed on a claim of negligent misrepresentation Morris must establish: (1) Brandéis falsely represented a past or existing material fact without any reasonable basis for thinking it to be true; (2) Brandéis intended to mislead Morris into relying on the representation; (3) Morris is unaware of the falsity of the representation; (4) Morris justifiable relied on it; and (5) Morris suffered harm due to his reliance. See Nota Construction Corp. v. Keyes Assoc., 45 Mass.App.Ct. 15, 18 (1998).
Although it is unclear what specifically Morris relies upon in alleging negligent misrepresentation as to the fairness of the institution, there are no allegations in the Complaint or his affidavit that Morris relied upon any such statement and suffered harm due to his reliance. See Golber v. BayBank Valley Trust Co., 46 Mass.App.Ct. 256, 257 (1999) (justifiable reliance on a false statement of fact is a necessary element of a misrepresentation claim). More importantly, however, the record is devoid of evidence that Brandéis made this statement with the intent to deceive Morris. It is undisputed that Morris had a copy of the Handbook prior to the hearing. The Handbook specifically sets forth the role of the advisor, and any reading of the Handbook provisions would have cleared up any misunderstanding he had as to the advisor's role. Accordingly, Morris’s misrepresentation claim must fail because he has failed to establish that he will be able to prove the necessary elements of his claim.
IV. Breach of Fiduciary Duty (Count IV)
In Count IV, Morris alleges that Brandéis had a fiduciary relationship with him because of his status as a student. Morris further alleges that Brandéis breached that fiduciary duty by failing to provide him with true and accurate information and guidance throughout his disciplinary process. Brandéis asserts that Morris’s fiduciary claim must fail simply because there is no fiduciary relationship between Morris and Brandéis. This court agrees.
A fiduciary relationship may arise from a special relationship or from when one person places articular trust and confidence in another. See Hawkes v. Lackey, 207 Mass. 424, 432 (1911). The relationship between students and universities is generally contractual rather than fiduciary. Compare Mullins v. Pine Manor College, 389 Mass. 47 (1983) (no fiduciary duty found between colleges and student. Rather, school had duty to use reasonable care to provide security that it voluntarily undertook to provide). In Williamson v. Bernstein, 5 Mass. L. Rptr. 94, 1996 WL1185104 (Mass. Super.) (Feb. 20, 1996) (McHugh, J.), the Superior Court considered and rejected a similar contention that the student-university relationship created a fiduciary duty after the student argued that “the college had a fiduciary relationship with [her] because of her status as a student.” Id. at *3. This case is no different, and Morris has cited no Massachusetts appellate authority suggesting otherwise.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant Brandéis University’s motion for summary judgment is ALLOWED on all counts of plaintiff Drew Morris’s Complaint. Final judgment is entered in favor of defendant Brandéis University.

 Section 20 of the Handbook provides the Procedural Standards in the Judicial Process.

 Morris’s 9A(b)(5) statement includes various portions of his affidavit, his interrogatory answers and deposition which contain hearsay, multiple hearsay and conclusory statements about subjective personal beliefs. For example, Morris states that Professor Polonsky told him that he could no t ser ve in such a capacity without having “a major row with a colleague” and in fact he had been intimidated by individuals in the University into not acting in such a role. Morris further states that Professor Jankowski also told him that he could not serve as his advisor for similar reasons. Morris states that a graduate student and Ph.D candidate also told him he could not assist him because it had been “made clear to him” that it was not wise to do so in light of his position as a candidate in the History Department. This court disregards these statements as insufficient in a summary judgment analysis since they would not be admissible at trial. The inquiry with respect to a Rule 56 motion deals only with materials, which, if the case were put to tried would be proper for admission in evidence. Hearsay and multiple hearsay would not be admissible in evidence.

 Morris’s transcript says nothing about his suspension in 1997.

 For purposes of the motion for summary judgment, Brandies concedes that the Handbook, including the Rules and Regulations, constitutes a contract between the parties.

 In support, Morris provides his own affidavit in which he states that “he was later informed by the two professors that they had been intimidated into not assisting him by another professor and/or other faculty”; and that the “Ph.D candidate called plaintiff and simply stated that it had been made clear to him that he could not assist”; and that one of the professors stated in a letter that he was "unwilling to involve [himjself in major row with a colleague.” Morris also submits a letter written by Professor Polonsky (Exhibit K to Morris Affidavit) as evidence that Brandéis deterred him from assisting Morris. However, this Court finds that the letter is irrelevant to Morris’s allegation that Brandéis denied him an advisor. Moreover, it is insufficient in demonstrating that a genuine issue of material fact exists.